Rebecca Dyer v. William Morris.

Dyer
v.
Morris.

1. To say of a woman, she has gone down the river with two whores to a Goose-horn, and is now there with them; is not actionable without a *colloquium* as to the kind of house, or place alluded to, and to which they had gone.—Quære, are they actionable with the colloquium?

2. The witnesses were ordered by the court, to leave the court house during the examination of witnesses. A witness returned in violation of the order.—The deft., applied to examine him. The wit. stated he had returned, because the defd. told him he did not wish to examine him—and the defd., stated he would not examine him to any point on which the others had been examined.—Held that the cir. ct. did not err in refusing to permit him to be examined.

3. A separate and additional opinion of Judge McGirk, that the meaning of Goose-horn should be averred, and that the hearers understood it as averred.

| | |
|---|---|
| 4 | 214 |
| 54a | 559 |
| 4 | 214 |
| 64a | 471 |
| 4 | 214 |
| 66a | 539 |

Error to the circuit court of Montgomery county.

Opinion of the court delivered by Tompkins J. *

Dyer sued Morris in an action on the case for words spoken, and had judgment in the circuit court; and to reverse that judgment, Morris prosecutes his writ of error. —There were four counts in the declaration. Before the trial, the defendant moved the court to strike out each count, and the court did strike out the first and fourth, but refused to strike out the second and third counts. After verdict and judgment, the defendant moved for a new trial, and the court overruled his motion. A motion in arrest of judgment was then made and overruled.

The reason assigned for a new trial is, that the evidence does not support either the second or third count of the declaration; other reasons were assigned, but as they seem to have been assigned without paying due attention to the subject and to be most obviously bad, they are not adverted to. On the trial the plantiff in error produced a witness, whom the court refused to permit to testify, because he had been in the court while the other witnesses were under examination, contrary to an order of court made to that effect. The witness stated that he had returned into court, because he was told by the plantiff in error, that he would not be examined, and the plantiff in error declared that he did not wish to examine the witness on any point on which the other witnesses had been examined. The enquiry then will be,—

---

* Judge Wash absent.

AUG. TERM
1835.

Dyer
v.
Morris.

To say of a woman, she has gone down the river, with two whores, to the Goose horn, and is now there with them, is not actionable, without a colloquium, as to the kind of house or place alluded to, and to which they had gone. Query? are they actionable with the colloquium?

did the court commit error—1st in refusing to strike out the second and third counts in the declaration?—2nd, in refusing to arrest the judgment?—3rd, in refusing to grant a new trial?—4th, in rejecting the witness offered.

1st. The words spoken, as charged in the second count are:—"Rebecca Dyer's daughter has gone down the river with two whores; Mrs. Dyer says she is gone to see her uncle—but it is generally believed by those persons who are acquainted with the family, that she is gone with the two women (the two whores aforesaid, meaning to the goose-horn—a bawdy house, or house of ill fame meaning) at St. Louis. The said defendant meaning thereby, and it was so then and there understood by the said Joseph Counts and other citizens, present as aforesaid, that the said plaintiff was in company with two bawds in a bawdy house at St. Louis, and herself a bawd." The words stript of the inuendo's, several of which have been omitted as altogether useless, are:—"Rebecca Dyer's daughter, has gone down the river with two whores; Mrs. Dyer says she is gone to see her uncle, but it is generally believed by those persons who know the said plaintiff and her family, that she is gone with the two women to the goose-horn at St. Louis."—An inuendo, as "he (meaning the said plaintiff,)" is only explanatory of some matter already expressed, it seems to apply the slander to the precedent matter, but cannot add to, enlarge, extend or change the sense of the previous words, and as already stated, the matter to which it alludes must always appear from the antecedent parts of the declaration.—See 1st Chitty's pleading, p. 383, and 1st Saunders p. 243, note 4, where it is said, that in an action upon the case for saying of another "he has burnt my barn," the plaintiff cannot by way of inuendo, say, meaning "his barn full of corn," because that is not an explanation of what was said before, but an addition to it. But if in the introduction, it had been averred that the defendant had a barn full of corn, and that in a discourse about that barn, the defendant had spoken the words of the plantiff, an inuendo of its being the barn full of corn, would have been good; for by coupling the inuendo with the introductory averment "his barn full of coin," it would have made it complete. The note is long and all the matter well worth a lawyer's attention.

Now to apply the remarks in this note, to the count before us, who can understand that the pleader when he states that the defendant charged that the plantiff went with two whores to the goose horn at St. Louis, means

also to inform us that a goose horn, is a bawdy house, or house of ill fame; for it is certain that those two words goose horn, do not of themselves import as much, nor is there any thing in the introductory part of his declaration to which his inuendo directs us for an explanation of the term; still less could it be expected that we should understand from those same words that the plaintiff was at the time of speaking those words in the company of two bawds in a bawdy house, at St. Louis, and herself a bawd.

A bawd is one who procures opportunities for persons of opposite sexes to cohabit in an illicit manner, and may be, while exercising the trade of a bawd, perfectly innocent of committing in his or her own proper person, the crime either of adultery or of fornication; whatever the person speaking these words might have meant, there can be no doubt that the words, as here charged to be spoken, show no cause of action, and the court should have stricken out this count, on the motion of the defendant, and the defect in this count being such as a verdict does not cure, the judgment unless the third count be good, must be arrested.

The words charged to be spoken in the third count are:—Dyer's daughter has gone down the river with two strange women, on pretence of visiting her uncle, but I believe that the two strange women with whom she is gone belong to the goose horn, (thereby meaning a bawdy house,) and that she is now with them there; meaning thereby that the said plaintiff on pretence of visiting her uncle, had left her home and become the inmate of a bawdy house, and was by profession a bawd. Strip the words here laid, of the inuendos, which as before said, point to nothing averred in the introductory part of the declaration, and therefore are of no avail here, and we have left this charge, that the plaintiff has gone down the river on pretence of visiting her uncle, in company with two strange women, but I believe the two women with whom she is gone, belong to the goose horn at St. Louis, and that she is now with them there. The words charged in this count, vary from those in the second, in this, that in place of two whores we have two strange women, believed by the defendant to belong to the goose horn, and that the plaintiff is believed by the defendant to be, at the time of speaking the objectionable words, with them there. Had it been averred in the introductory part of the declaration, that there was at St. Louis, a house such as this place called goose horn, is alledged to be in the

inuendos, then if the words charged to be spoken, had been set forth in the count, with apt reference to that averment by means of the inuendos, or by means of one or more of them if necessary, then the matter would, according to the authority found in the note above cited from Saunders, have been fairly before the court; whether the words charged to be spoken, imputed to the plaintiff the offence of adultery, fornication, or of exercising the trade of a bawd, but as the matter stands this count is clearly bad, and the second count being also bad, and the first and fourth counts being stricken out in the circuit court, the judgment ought to have been arrested.

As to the third point, whether a new trial ought to have been granted for defect of evidence; one witness testifies that Morris the defendant, stated in conversation, that Mr. Dyer's daughter had gone down the river with two strange women and a negro or mulatto man, and that Mrs. Dyer said that they had gone to her uncle's, but it was generally believed in the bottom, that these two women were from the bawdy house or goose horn in St. Louis, and that Mrs. Dyer's daughter was now with them there. It cannot be objected that these words do not support the third count, they are even stronger than those laid in that count: as then the third count is fully made out by the words here proved, the court committed no error in refusing a new trial.

The fourth point remains, did the court commit error in refusing to permit the witness to be examined, who it will be recollected, had been by order of court, directed to be kept at a distance from the court, that he might not hear the testimony as given in by the others.

The witnesses were ordered by the court to leave the court house, during the examination of witnesses, a witness returned in violation of this order. The deft. applied to examine him. The wit. stated, he had returned, because the deft. told him he did not wish to examine him, and the deft. stated, he would not examine him to any point, on which the other had been

The witness said that the defendant told him, that he did not intend to examine him, and the defendant pledged himself not to examine the witness to any point on which the others had testified; this is, in our opinion, but a poor safeguard. If the defendant wished to examine his witness on any point whatever, he should not have undertaken to introduce him to the court house, contrary to an order of court to keep him out. We see here no ground laid for dispensing with the rule made, no affidavit of testimony not before known, or not in his power to be known, but from any thing we can see, the witness was permitted to enter the court house merely because the defendant did not wish to take the trouble to think that his testimony might be wanted. In this, then, the circuit court, as we think, committed no error.

The court then, having refused to strike out the 2nd and

3rd counts, and also, having overruled the motion in arrest of judgment, has, in this, as we think, committed error, and its judgment is therefore reversed, and the cause remanded.

McGirk, Judge.

I am further of opinion, that the meaning of the word goosehorn should be averred somewhere in the declaration, and that there should also be an averment that the word was used in that sense and the hearers so understood it.

A separate and additional opinion of Judge McGirk, that the meaning of *Goose horn* should be averred, and that the hearers understood it as such.