## KEITH VS WILSON.

AUGUST TERM.
1840.

Keith
v.
Wilson.

| 6 | 435 |
| 32a | 90 |
| 6 | 435 |
| 46a | 377 |
| 6 | 435 |
| 124 | 536 |

1. A suit instituted without any authority from the person in whose name it is conducted should be dismissed; and upon a suitable suggestion of facts, the Attorney will be required to show some authority either verbal or written, for conducting the suit.

2. A witness cannot, by contumacious behaviour, deprive a party of the benefit of his testimony, if there be no laches or connivance on the part of the person who has a right to his testimony: Therefore, when a witness who had been sworn in the cause, and ordered by the court to keep without the hearing of the witnesses under examination, disobeyed the order and remained within hearing, and this without the consent or connivance of the party to the suit, such party did not thereby loose the benefit of the testimony of such witness, and the Circuit Court erred in refusing to permit the witness to give testimony in the cause.

Appeal from Boon Circuit Court.

*Leonard, counsel for Appellant.*

1st. The proceeding in the name of Wilson ought to have been dismissed, because it was commenced and carried on without his authority, knowledge or consent. M'Alexander vs Wright 3, Monroe Rep. 189. Robison vs Eaton, 1. term. Rep. 62, opinion of justice Van-Ness in Denton vs Noyes. C. John, Rep. 306 and cases there cited.

2nd. Wilson ought not to have been excluded as a witness Parker vs M'William 19, Eng. Com. L. R. 204. Beamon vs Ellice 19, Eng. Com. and R. Cond. 538. Rex vs Colly, M. and M. 399, and Rex vs Brown, both cited in note to Beamon v Ellice 19, Eng. Com. L. and Rep. cond. 538. Cook vs Netherton 25, Eng. Com. and R. cond. 627. Do. Ex. Dem. Good vs Cox In R. B. 30 Geo. 3, cited in note to last mentioned case.

*Kirtley counsel for Appellee.*

1st. The Circuit Court committed no error in overruling, at the August term 1839, Keith's motion to refuse leave for Wilson's interpleader to be proceeded in.

C. J. R. 34. Smith vs Stewart and Do 296. Denton vs Moyes 1. Strange 693, Lorymen vs Hollister Cro. Jac. 695. Alleby vs Colly 1. Binney R. 214. 479, 7. Pick, R. 137. Smith vs Bowditch.

2nd. The Circuit Court committed no error in refusing to permit the witness Wilson to give evidence. 1. Stark. Ev.

163. C. Bingham 683. Parker vs M. William 4. Carrington and Bayne 585. Beaman vs Ellis, 1. Ry. and M. 430, 1. Woody and Malcom 329, 3. Stark E. 1733. 1. Phi. Ev. 268.

Opinion of the Court by Napton Judge.

Keith commenced an action of debt against Elisha Lambert in the Boon Circuit Court, returnable to the November term 1838, and attached, upon making the necessary affidavit, three slaves and other personal property, as the property of Lambert.

At the return term, leave was given to James Wilson to interplead in the cause, and an interplea was accordingly filed, claiming the property levied on, upon which issue was taken.

At the April term 1839, the cause was continued at the instance of Keith, and afterwards at the August term 1839, before the trial came on, Keith moved the court to refuse leave for the interpleader to be further proceeded in, because the said proceeding was instituted without any authority from James Wilson, and without his knowledge or consent. In support of this motion, Keith read his own affidavit which set forth the following state of facts.

The property attached, originally belonged to one Nancy Vanlandingham, who intermarried with one James Wilson, sometime in the spring of 1831. Said Wilson came to the State, only a few months previous to his marriage. Wilson lived with his wife a few days, and then left the State, under pretence of going to Ohio to procure some property, which he alledged had been left him, by his father. Previous to his marriage with Miss Vanlandingham, the affidavit states, Wilson had intermarried with a Miss Allen of Ohio, who had ever since been his wife, was still living, and by whom he had several children. Some years after Wilson left this State, Nancy Vanlandingham intermarried with Lambert, the defendant, and died, leaving by him one child, her only heir at law. The property in question, is claimed by Wilson, by virtue of his marriage with Miss Vanlandingham, Wilson has never been in the State since his abandonment

of this lady, and the affiant avers, that the proceeding is carried on in his name, without his knowledge or consent.

In opposition to this motion, the affidavit of Merritt Vanlandingham was read, which denied the validity of Lamberts marriage, but did not allege any authority from Wilson, or deny his non-residence. It was also shown, on the hearing of this motion, that Todd & Kirtley, whose names were signed to the interplea, were licensed attornies of the Boon circuit court. The circuit court overruled the motion to dismiss. On the trial of the cause, the court, on the application of Keith, directed the witnesses to absent themselves from the court house so as to be without the hearing of those under examination. Evidence was then given on behalf of the claimant, conducing to show that he had come into possession of the property attached by his intermarriage with Nancy Vanlandingham in 1831, and that after living with her a short time, he left this State, leaving the property in her possession.

Keith then, read depositions to show that previous to Wilson's marriage with this lady, he had intermarried with a lady in clermont county, Ohio, and that his wife, in Ohio, was living at the time of the second supposed marriage, that he had never been divorced &c. The object of the testimony was to identify the Wilson of Ohio, who was married to Miss Allen, with the Wilson who married Miss Vanlandingham. For this purpose, appellant offered to introduce one Alexander Wilson, who had been sworn and charged under the order of the court to keep without the hearing of the witnesses when examined. Counsel for the claimant objected, and showed that this witness had disobeyed the orders of the court, by taking a seat near the door, and had heard much of the testimony on the question of identity, the material question on the issue. It was admitted that neither Keith or his counsel consented or connived at this conduct of the witness. The court refused to let the witness be examined; after other testimony was submitted to the jury, a verdict was rendered for the interpleader. A motion was then made to set aside the verdict, because of the exclusion of the witness Alexander Wilson.

On the hearing of this motion the affidavit of Wilson was read, who denied any intentional disobedience to the orders of the court, and avowed that he had taken his seat within hearing of the witnesses under examination, without the direction of Keith or his counsel, and under a misapprehension of the object of the order. The affidavit of Keith in relation to the materiality of the testimony of this witness was also read. The court overruled the motion for a new trial and exceptions were duly taken.

The questions presented to the consideration of this court, are first, did the court err in refusing to dismiss the interpleader, for the causes alledged, and secondly, was the witness, Alexander Wilson properly excluded, 1. the effect and validity of a judgment, obtained by the appearance of an attorney, without any authority, has been variously determined by the courts, both in England and this country. Whether the judgment be absolutely void, and no bar to a subsequent action, or whether the judgment must stand, and the remedy of the losing party is against the attorney of record, is not, I think, very satisfactorily settled by adjudged cases. In the case of Denton and others v. Moyes (6. Johns, R. 296,) it was held by a majority of the court that a judgment obtained by confession, without any authority from the defendant to the attorney who confessed the judgment, was so far regular that the lien acquired by the plaintiff should not be disturbed, but it might be opened for a trial on the merits. Such judgments were also held to be invalid, where there was collusion between the attorneys on both sides, or where the attorney, who assumes without authority to act for another is irresponsible. His position seems to be in accordance with the authority in 1. Salk 88, where the court said that "if the attorney be a beggar or a suspicious character, the court will set aside the judgment; for otherwise, the defendant has no remedy, and any one may be undone by that means." This criterion, by which the validity of a judgment obtained under such circumstances is to be vested, Mr. VanNess, who dissented in that case from the majority, considered a very unsafe one.

The case of Robson v. Eaton, (1 Term R. 62,) is more ap-

plicable to the principle involved in the case now under
consideration.   In that case, an  attorney instituted a suit
under a forged warrant of attorney, judgment was obtained
and the money paid over to plaintiff's attorney.   The court
of King's Bench held that in a subsequent action, brought by
the plaintiff, the first judgment and payment under it, to an
unauthorized attorney was no bar.   But I do not conceive
it necessary for the court to determine in this case, whether
a judgment obtained under such circumstance be valid or
not.

The only question here is whether, if the court discover *A suit instituted without any authority from the person in whose name it is conducted should be dismissed; and, upon a suitable suggestion of facts, the attorney will be required to show some authority, either verbal or written, for conducting the suit.* that the proceedings are instituted without any authority from the person in whose name they are conducted, they should not be dismissed.   On this question I entertain no doubt.   If the current of decisions favors the validity of a judgment so obtained, there is the greater necessity that when the absence of all authority is discovered, the proceedings should not be allowed to proceed to judgment.— The remarks of the Supreme Court of Kentucky, when deciding this very point, in the case of McAlexander v. Wright (3 Monroe R. 192,) are forcible and just.   It was contended in that case, as it was in this, that the attorney's license was a sufficient warrant to authorise the court to consider the proceedings as properly instituted.   The court observe on this point, "The right to be employed and appear is one thing; this is proved by the license, and the law under which it was granted.   The fact of being actually employed is another matter, and is proved by the warrant of attorney.— In England, from which our jurisprudence is derived, attorneys must have a general license and an admission in court, yet the warrant of attorney could not be dispensed with in cases where it was properly demanded.   And the general license was not intended to reach further in this country."

It will be observed, that in Kentucky the court held, that a warrant of attorney was necessary, when properly demanded, because the laws of Kentucky had never dispensed with the necessity of such warrants, but the principle of the decision will justify us in saying, that in this State where warrants of attorney have been dispensed with by sta-

D2

tute, a party may still upon a suitable suggestion of facts, require the attorney to show some authority either written or verbal.

The question remains, then, whether in this case the party laid a sufficient ground to justify the court in ordering the attorneys of record to show their authority.

The affidavit of Keith established that Wilson, the interpleader, had left this state nearly ten years before the institution of the proceedings in his name, and had never returned; that previously to his marriage with Miss Vanlandingham he had a wife in Ohio, living at that time and alive yet, and that Wilson had no knowledge of the proceedings carried on in his name whatever. The fact of Wilson's absence from the state was admitted, and his marriage and desertion of Miss Vanlandingham. Nor was it pretended, that the attorneys had any authority from Wilson. Other matters were charged however and supported by affidavit, which had no bearing on the question then at issue.

In the case of McAlexander v. Wright, the affidavit set forth that Wright the plaintiff, had long since left Virginia and gone to Florida or some of the then Spanish dominions, and had never been heard of since, and that from this and other circumstances, affiant believed him to be dead, and that he verily believed, that Wright had given no authority to prosecute this suit to any person, &c.

In that case the absence of Wright and his never having been heard of was thought, by the court to raise a presumption of his death, and in that way the rights of the defendant would be jeopardised. In the case before the court, the absence of Wilson for nine years and upwards, after living with his supposed wife, in this State, for only a few weeks, it was not pretended, raised any presumption of his death, but it raised a presumption as fatal to the interests of Keith, and might well constitute a reason why some authority from him should be produced.

But it is thought, that in this case the motion came too late. Two continuances had taken place and an issue was joined on the interpleader, before the motion for dismissal was made. I cannot see how this question has any bearing

on the merits of the motion. If the interest of Keith alone were involved, his laches might perhaps forfeit his legal rights, but the court was bound to protect the interests of Wilson as well as Keith, and if at any stage of the proceedings, a presumption was raised, that no authority from Wilson existed, it was the duty of the court to arrest the proceedings, unless that presumption was rebutted.

2. The propriety of excluding the witness who had disobeyed the order of the court, is the only question remaining to be disposed of, This rule, it appears from all the authorities, is not an inflexible rule, but the exclusion of a witness under it must depend somewhat on the discretion of the court. The circumstances which must control this discretion are well settled. If it appears that the witness has disobeyed, by the consent or procurement of the party, the court may very properly exclude him. Dyer v. Morris, 4 Mo. R. p. In some cases, where the witness has been contumacious and purposely transgressed the order, this circumstance has been held sufficient to justify the court in excluding him. But I have seen no case, in which it appeared that the disobedience of the witness was owing to his misapprehension of the object or nature of the order, and where neither the party or his counsel were privy to such disobedience, in which the court has been held warranted in excluding the witness. Indeed, if such an inflexible rule did exist in any of the courts of this country, it might well be questioned whether it would not be sounder policy to sacrifice the practice altogether, rather than endanger more vital principles than can be involved in the blind adhesion to a rule of court, however reasonable and right in ordinary cases.

A witness cannot deprive a party of the benefit of his testimony by any contumacy of his, if there be no laches, or connivance on the part of the person who has a right to his testimony. The court is invested with ample powers to punish such contumacy and enforce its orders, and will it be contended, that a party is bound to watch his witnesses to prevent their misconduct? The suitor has no extraordinary powers to enforce his wishes, nor is it, I apprehend, his duty

AUGUST TERM.
1840.

Keith
v.
Wilson.

A witness cannot, by contumacious behaviour, deprive a party of the benefit of his testimony, if there be no laches or connivance on the part of the person who has a right to his testimony: Therefore, when a witness who had been sworn in the cause, and ordered by the court to keep without the hearing of the witnesses under examination, disobeyed the order and remained within hearing, and this without the consent or connivance of the party to the suit, such party did not thereby loose the benefit of the testimony of such witness, and the Circuit Court erred in refusing to permit the witness to give testimony in the cause.

to exercise more than ordinary diligence. If the misconduct of the witness comes under his notice, it would be, undoubtedly his duty to present the matter to the court, but the affidavit of Keith in this case negatives that fact, and the affidavit of the witness establishes that there was no wilful contumacy. Under these circumstances, I do not see, how the court has any right to deprive Keith of the benefit of this testimony.

The fact that the witness heard a portion of the testimony, contrary to the orders of the court, may go to affect the credibility of the witness, and would undoubtedly be a proper subject for comment before the jury; but it cannot affect his competency.

The consequences that would result from any other doctrine, seem to me well worthy of consideration. If a witnesses contumacy be a sufficient ground to warrant the court in excluding him altogether, notwithstanding it appears that it was through no connivance or default of the party to the suit, an unavailing and reluctant witness might, by wilful and intentional disobedience to the order, at any time deprive the party of the benefit of his testimony. And yet it is not only reasonable and just, but it is well settled by authority, that a witness cannot by making a bet or doing some other act to disqualify himself, deprive the party of his testimony.

For these reasons, the judgment of the circuit court should be reversed.

