The State v. Gesell.

---

THE STATE v. GESELL, *Appellant.*

Division Two, November 5, 1894.

124 531
75a 200

124 531
80a 651

124 531
98a ¹454

1. **Criminal Practice**: IMPEACHMENT OF WITNESS. The veracity of a witness can not be impeached by inquiry as to specific acts of past delinquencies.

2. ——: ——. The examination in such case should be limited to matters affecting the reputation of the witness for truth and veracity or his general moral character.

3. ——: WITNESS UNDER RULE, DISOBEDIENCE OF. When after an order of court excluding all witnesses from the court room defendant's witness, a codefendant, to whom a severance had been granted, remains during the trial seated by defendant, the trial court is justified in refusing to permit him to testify on the ground that the defendant participated in the disobedience.

*Appeal from St. Louis Criminal Court.*—HON. H. L.
EDMUNDS, Judge.

AFFIRMED.

*Robert W. Goode* for appellant.

(1) The court committed error in excluding the
inquiry, in her cross-examination, into Mrs. Glaze-
brook's previous character. *Muller v. Association*, 5
Mo. App. 401; *Ring v. Jamison*, 2 Mo. App. 591; s. c.,
73 Mo. 242; *State v. Raven*, 115 Mo. 423. (2) The
court erred in refusing to permit the witness Furber
to testify because he remained in the court room after the
order of exclusion. *Keith v. Wilson*, 6 Mo. 441; *Dyer
v. Morris*, 4 Mo. 214; *O'Bryan v. Allen*, 95 Mo. 74; 1
Wharton on Evidence, sec. 491. "A witness who dis-
obeys such an order is guilty of contempt; but the judge
can not refuse to hear his evidence, although it is matter
of remark to the jury." 2 Best on Evidence, sec. 636.
Any other rule would put it in the power of a hostile
witness to deprive a party of his evidence, and we con-
clude that the better rule is, that it is reversible error
to exclude a witness who has disobeyed the order,
unless the party or his attorney calling the witness has
been party or privy to the violation of the order, and
this conclusion, we believe, has the support of the fol-
lowing authorities: *Keith v. Wilson*, 6 Mo. 435;
*Hubbard v. Hubbard*, 7 Ore. 42; *Hey v. Commonwealth*,
32 Gratt. 946; *Davenport v. Ogg*, 15 Kan. 363; *Bell v.
State*, 44 Ala. 393.

*R. F. Walker*, Attorney General, and *C. O. Bishop*
for the state.

(1) The indictment is in proper form; there is
no error apparent upon the record. R. S. 1889, sec.
3476. (2) There was no error in the court excluding

the questions asked of Mrs. Glazebrook on cross-examination. The court based its action at the time upon, and is justified by, the authority of *State v. Houx*, 109 Mo. 654. (3) No exception was saved to the order of the court excluding the witnesses. The court, however, has the undoubted right to make such order. *State v. Fitzsimmons*, 30 Mo. 236; *State v. Hughes*, 71 Mo. 633. It has been commended as a "salutary practice, especially in criminal cases, intended to prevent collusion and concert among the witnesses to harmonize their testimony." *State v. Hopper*, 71 Mo. 425. (4) Where a party calling the excluded witness is blamable for his disobedience, the witness may be excluded from testifying. Wharton's Criminal Law [9 Ed.], sec. 446; *O'Bryan v. Allen*, 95 Mo. 68.

SHERWOOD, J.—This appeal is the result of the defendant being tried on the charge of manslaughter in the fourth degree, resulting in his punishment being assessed at a fine of $500. He was indicted with three others, Arthur E. Furber being one of his co-indictees, and Seth O. Wilkins being the victim of the crime, a brutal assault, during which Wilkins was so struck by one of a party of four men, who were pursuing him, that he fell in the street, and died in two days thereafter. It does not appear Wilkins resisted or attempted to resist the assault. The defendants applied for a severance, and a separate trial was granted each of them. The state elected to try defendant Gesell first, and so proceeded with his trial—resulting as aforesaid.

Before these proceedings, however, the court, at the instance of the circuit attorney, ordered the exclusion of all the witnesses from the court room, as well those for the state as for the defendant, and proclamation to that effect, under the direction of the

court, was made by the sheriff in the court room, and the witnesses for the state were assigned and directed by the sheriff to one anteroom, and the witnesses for the defendant assigned and directed to another, which rooms were at once respectively occupied by witnesses in attendance on the trial. But, Furber, who had been a codefendant with Gesell, and had been severed from him, as already stated, in the words of the bill of exceptions, "remained seated by the defendant Gesell in the court room during the whole trial."

The bill of exceptions sets forth: "The state, to sustain the issues on its part, offered evidence to prove the defendant guilty, as charged." The testimony of but one witness is preserved, to wit: of one Emma Glazebrook, who testified for the state as an eyewitness of the alleged assault, and identified the defendant as one of the assaulting party. Upon cross-examination, for the declared purpose of impeaching her credibility, she was asked by the defendant's counsel where she was born, and upon her answering that she did not know, was further asked: "Where were you when you first remember where you were?" An objection to which by the state was sustained. She was also asked, in succession, where she went to school, to whom she was married in Springfield, if she did not go by the name of Miller, if she did not live with a man by the name of Miller, if she was married in Springfield, what name she went under in Springfield before coming to St. Louis, if she did not live with a man by the name of Miller in Springfield as his wife, whether she was not married and living with her husband, and whether Mr. Glazebrook was dead or alive. The state objected to all of these questions as wholly immaterial, and the court sustained the objections.

The bill further recites: "The defendant, to sustain the issue, on his part, offered evidence tending

to prove his innocence of the crime charged, and after all the witnesses, including the defendant Gesell, had been sworn and testified, then said Furber was offered as a witness on the part of the defendant, and the following occurred:

"*Mr. Goode:*   'Mr. Furber, be sworn.'

"*Mr. Bishop:*   'I object to his being examined. He was in the court room all the time, and an order was made excluding the witnesses.'

"*The Court:*   'Yes.'

"*Mr. Goode:*   'I did not think that applied to the defendant.'

"*Mr. Bishop:*   'He is not a defendant in this case we are trying, and I asked the court to make that order.'

"*Mr. Goode:*   'Well, then, your Honor, I except to the court's ruling and the defense is through,' " etc.

No objection is taken to the validity of the second count of the indictment, on which the defendant was tried, nor to the instructions. The only points presented in this court for consideration are two, which will now be discussed in the order as they arise in the bill of exceptions.

I. There was no error committed in refusing counsel for defendant to interrogate Glazebrook in the manner attempted. This action of the court may well be made to rest on two grounds:

In the first place the credit of a witness can not be impeached by inquiry into *specific past delinquencies,* but only by facts which go to show what the general moral character or reputation therefor are, and what the general moral character or reputation for truth and veracity. In the second place it will not be allowed in a court of justice to put a witness on the rack as to past transactions, to rake in the ashes of long forgotten scandals, and to uncover the scars of old wounds in

order to discredit a witness or overthrow his moral character. Wharton's Crim. Evid. [9 Ed.], sec. 472; *State v. Parker*, 96 Mo. 382; 1 Greenleaf on Evid., sec. 459; *State v. Houx*, 109 Mo. 654.

II. The next point to consider is whether the court erred in rejecting Furber as a witness. The authorities are in hopeless conflict as to whether a court can absolutely reject the testimony of a contumacious witness, who has disobeyed its order of sequestration. The point has been decided both ways in this state, one case holding that it is in the discretion of the trial court whether the testimony of the recalcitrant witness shall be admitted (*State v. Fitzsimmons*, 30 Mo. 237), the others that the trial court in this, and outside of certain exceptions, has no such discretion and must admit the refractory witness to testify. *Keith v. Wilson*, 6 Mo. 435; *O'Bryan v. Allen*, 95 Mo. 68. These last mentioned cases assert the better doctrine. 1 Wharton's Law of Evid. [3 Ed.], sec. 491 and *cas. cit.*; 2 Phillips on Evid.; Cowen & Hill's notes, 887; 2 Best on Evid., Morgan's notes, sec. 636; 1 Bishop on Crim. Proc., sec. 1191.

If the party who desires the testimony of the disobedient witness, has *"participated in his disobedience"* (1 Bishop on Crim. Proc., sec. 1191) or has been guilty of *"connivance"* at the fault of the witness (*Keith v. Wilson, supra*), that is to say, has been guilty of "voluntary oversight" or "passive consent" (Webster's Internat. Dict.), while the witness by his presence was violating the rule, all the authorities agree he should not be allowed to testify.

In the present instance we think the record shows such evidence of participation in the disobedience of the witness, such a conniving at his presence in the court room, as to warrant the ruling of the lower court, whose judgment we now affirm. All concur.