COMMONWEALTH *vs.* RICHARD CROWLEY.

Suffolk.    February 1, 1897. — February 27, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Manslaughter — Witness — Discretion of Court — Exceptions — Trial.*

At the beginning of the trial of a criminal case, the judge, at the defendant's request, excluded the witnesses on both sides from the court room. B., who had taken notes at a former trial of the case, remained in court taking notes of the

testimony as an assistant to the defendant's counsel. The trial lasted for two and one half days, the larger part of which was occupied by the government in putting in its case; and the government's witnesses were inquired of by the defendant's counsel if they had not testified at the previous trial differently from what they testified at this, and, when putting these questions, he apparently read from the notes of the previous trial, stating especially in each question facts at variance with those last testified to. He then called B. as a witness for the purpose of contradicting a witness for the government, by testifying that the latter's testimony on material points at the former trial had been different from that given at the present trial; and stated that, when the witnesses were excluded from the court room, he did not know that it would be necessary to call B. *Held*, that it was within the discretion of the judge to exclude the testimony of B.

No exception lies to the refusal to give an instruction requested which is not applicable to the facts proved.

There is no error in allowing the district attorney, in his argument to the jury at the trial of an indictment for manslaughter, to make the statement that "the defendant upon these facts might well have been indicted for the crime of murder," if there is no statement by him of any fact not in evidence and no misstatement of the evidence.

INDICTMENT for manslaughter, in causing the death of John E. Burns by stabbing him with a knife, on May 4, 1895, at Boston. After the former decision, reported 165 Mass. 569, the case was tried in the Superior Court, before *Bond*, J., who allowed a bill of exceptions, in substance as follows.

It appeared in evidence, on the part of the defence, that the defendant and his brother were in the saloon of one Jacobs on the evening of May 4, 1895, and that while there the defendant's brother David was struck by Burns; that Burns and David fought upon the sidewalk; and that they fell, and Burns, who was on top, struck David several times until they were separated by one Kilduff, one Ward, and others.

Ward, a witness for the government, testified that Burns struck David first, while another witness testified that David struck Burns first.

John F. Burk, a special police officer, testified that he led Burns to a passageway between Jacobs's saloon and the railroad; and that Burns said he was going down to go through.

While the struggle was going on upon the sidewalk, the defendant was there with others. The evidence was conflicting as to whether he assisted in separating the two men or not. After the struggle on the sidewalk, the defendant went back into the saloon; and his brother David testified that, after Burns was

taken off from him, he ran across to the other side of the street, and heard some one say, " If we can get him we will murder him "; and that he then crossed the street, went back into the saloon, and said to the defendant, who was standing in the whole-sale department of the saloon, " If we don't get out some back way they will murder us."

The defendant testified that, when David came into the door, and before he got near him, David said, " Dick, look out there, we are going to get murdered; is there any back door that we can get away ? "

The defendant further testified that he was afraid to go out; that he did not know whether it was best to stay in or to go out; that after that he went and got a knife; that he then asked Ward to let them out the side door; that Ward opened the side door, which was but little used, and, looking up and down the street and seeing that the crowd had got over on the other side of the street and away from that corner, told the brothers the place was clear; that thereupon they left the saloon, crossed the tracks of the Boston and Providence Railroad on New Heath Street, and continued along that street, when, near the corner of Bromley and New Heath Streets, on the latter street, " the first thing I knew I saw a man passing me; I looked at him, and when I saw the man I knew it was one of the crowd; I yelled at the top of my voice, ' Here they are; they will kill us, they will murder us.' I sang that out as loud as I could; after this man passed, I looked around to see if there was any one behind me, and the whole crowd were coming right along. They struck me on my head and threw me on my face and hands, and I was thrown a second time. As I was getting up, the man got his arm around my neck, and commenced to hit me in the face; I could not do anything to save myself; I had no chance to get away from him; I was stooping down with his arm around my neck, and he commenced to hit me in the face, split my lip, and choked me, and took away my breath. My wind was right out of me; I could not stand it a second longer. I had this knife in my hand, and I raised it up, when I felt his hold get loose of me. I did n't intend to kill him, — I did n't know that I had killed him."

It appeared that the defendant took the knife in question from

a table in the saloon after his brother came in from the street and told him that they were going to be murdered.

It appeared from the government's witnesses that, a short time after the trouble had occurred between David and Burns upon the sidewalk, Burns came out of the saloon, went down a passageway parallel to the railroad track and crossed over the railroad and went into a doorway on New Heath Street, where he was standing when the defendant and his brother went by on their way home ; that he met in the doorway three young men, and talked with them ; that he said, when the defendant and his brother came along, " There they come now " ; and that he followed them, and the trouble began ; and that it was in this locality that Burns was killed.

It also appeared that Burns was going in the opposite direction from his home, and that the defendant and his brother, when walking on New Heath Street, were going directly toward their own home ; that Burns weighed between one hundred and eighty and two hundred and ten pounds, and was very muscular ; and that the defendant and his brother were smaller men, David weighing about one hundred and fifty pounds.

The government contended, and introduced testimony tending to show, that there was no justification or occasion for the use of the knife by the defendant. There was no evidence that Burns was armed in any way.

At the beginning of the trial, by order of the judge, the witnesses on both sides were excluded from the court room at the defendant's request. The defendant's counsel offered as a witness Louis N. Bennett, who took the evidence at a former trial of this case, for the purpose of contradicting the testimony of a witness for the government by the name of Mary Swift, she having testified at the former trial upon material points as to which she testified differently at the present trial.

The defendant's counsel stated that, when the witnesses were excluded from the court room, he did not know that it would be necessary to call Bennett to rebut Swift's testimony ; and that he had excluded in good faith all the witnesses at the time of the beginning of the trial that he intended to call, and did not then know that he would be obliged to call any witnesses for the purpose of rebutting the testimony of a witness for the government.

The trial lasted for two and one half days, the larger portion of which was occupied by the government in putting in its case. Several of the government's witnesses were inquired of by the defendant's counsel if they had not testified at the previous trial differently from what they testified at this. The counsel when putting these questions apparently read from notes of the previous trial, stating especially in each question facts at variance with those last testified to. Bennett sat at the counsel's table, taking testimony as an assistant, during all the time that the government's case was going in and during all the time that the defendant's case was going in, and was the last witness called for the defence, the defendant and his brother being the other witnesses.

Mary Swift was one of the last witnesses called by the government in its direct case. The defendant's counsel did not offer Bennett for the purpose of contradicting any other government witness. The judge excluded the testimony of Bennett; and the defendant excepted.

The defendant requested the judge to instruct the jury as follows: " Where one is attacked by another on the highway, who manifestly attempts by violence to take his life or to do him great bodily harm, and under such circumstances no retreat being practicable, he is not only not obliged to retreat, but may pursue his adversary until he has secured himself from all danger, and if he kill him in so doing, and in trying to get away, it is justifiable self-defence and he should be acquitted."

The judge declined to give this instruction, and instructed the jury upon this point as follows:

" The issue is, the killing having been proved, whether the killing was lawful or unlawful. The defendant claims that the killing was in self-defence; it is on this ground that it is claimed by the defendant to have been lawful. When a person is assailed and he, acting under a reasonable apprehension that he is in imminent danger of death or great bodily harm, and that it is necessary for him to strike a fatal blow, that there is no other way to escape, he has the right to protect himself even to the extent of taking the life of his assailant. The person must be assailed. He would not have the right to assume that the deceased intended to assault him, and therefore to give him a fatal

blow; there must be some assault upon him at the time; there must be some overt act by the deceased at the time; when there has been a prior assault, but no overt act, at the time of the homicide, a killing is not justifiable. With reference to the reasonable apprehension of the defendant, this is to be considered from the standpoint of the defendant at the time of the homicide. The jury should consider the situation as it looked to him, not necessarily as he says now it looked to him, but as it looked to him then. Consider all that took place in the bar-room and outside on the sidewalk; what he had seen and heard there are to be considered as circumstances bearing on the defendant's situation. You are also to consider all that took place where the homicide took place: put yourselves in the place of the defendant at the time of the fatal blow, and determine on all the evidence how it looked to him. By imminent danger is meant immediate danger, such as must be met instantly, and cannot be guarded against by retreat or by calling upon others. . . .

"By great bodily harm is meant great personal injury. A mere personal indignity, or a mere battery from which great bodily harm cannot reasonably be apprehended, will not excuse a person in taking the life of his assailant.

"It must appear that the defendant endeavored to avoid any further struggle and retreated as far as he could until there was no probable means of escape; then, and not till then, can he kill his assailant. You should determine the facts, — what took place at the saloon, what took place at the corner when Burns was killed, and then determine whether under the law the killing was lawful."

The defendant excepted to the refusal to give the ruling requested.

The district attorney, in his closing argument to the jury, made the following statement: "The defendant upon these facts might well have been indicted for the crime of murder"; to which statement the defendant's counsel, at the time the words were spoken, made an objection, upon the ground that the defendant was on trial only for manslaughter. The judge did not stop the district attorney, and thereafterwards he repeated the statement, in substance, several times; and the defendant excepted. The jury returned a verdict of guilty; and after the verdict and

before sentence the defendant filed a motion in arrest of judgment, for the following reasons:

" 1. Because this court has no constitutional power or right to pass judgment and sentence, since the law upon which sentence is now moved for went into effect subsequent to the commission of the offence for which the defendant was tried, and because there is no law now authorizing sentence in this case.

" 2. Because the law under which it is proposed to pass sentence is illegal and void, because the term of imprisonment is indefinite and unusual, and because by sentencing this defendant thereunder he would be deprived of his liberty, contrary to the law of the land, and in violation of the Constitution of the United States and of this State.

"3. Because this court now has no right or power to sentence this defendant.

"4. Because the defendant took exceptions at his trial which have not yet been passed on by the court."

The judge overruled the motion; and the defendant alleged exceptions.

*W. H. Baker*, for the defendant.

*J. D. McLaughlin,* Second Assistant District Attorney, for the Commonwealth.

ALLEN, J.  The objection most relied on relates to the exclusion of the evidence of Bennett. At the beginning of the trial, the presiding judge had passed an order, at the defendant's request, excluding the witnesses on both sides from the court room. There was no exception in favor of Bennett, or of any class of witnesses; and Bennett did not withdraw, but remained in court, taking notes of the testimony as an assistant to the defendant's counsel. He had also taken notes at a former trial of this case; and he was now called as a witness for the purpose of contradicting a witness for the government, by testifying that the latter's testimony on material points at the former trial had been different from that given on the present trial.

The defendant's counsel stated to the court that, when the witnesses were excluded from the court room, he did not know that it would be necessary to call Bennett, and that he had excluded all the witnesses at the time of the beginning of the

trial that he intended to call, and did not then know that he would be obliged to call any witnesses for the purpose of rebutting the testimony of a government witness.

The bill of exceptions, however, goes on to recite that the trial lasted for two and one half days, the larger part of which was occupied by the government in putting in its case; that several of the government witnesses were inquired of by the defendant's counsel if they had not testified at the previous trial differently from what they testified at this; and that the counsel when putting these questions apparently read from notes of the previous trial, stating especially in each question facts at variance with those last testified to.    From this recital we infer that the court thought that the defendant's counsel was in fault, after having procured the order of exclusion of the witnesses, in not causing Bennett to withdraw during the progress of the trial, and as soon as the idea occurred to him of contradicting any of the government witnesses by calling Bennett with his notes of their former testimony.    Although in fact Bennett was only offered to contradict a single witness, the cross-examination of several of the government witnesses indicated that the counsel might have it in mind to call him as to their testimony also.    The facts recited in the bill of exceptions warranted the judge in thinking the defendant's counsel was in fault, and therefore the question of law which is presented for our determination is whether on this assumption he might lawfully exclude Bennett's testimony.    We are not called upon to determine what the rule should be in a case where the party himself and his counsel are free from fault.

Under the circumstances stated, we are of opinion that it was within the discretion of the court to exclude the testimony.    In *Holder* v. *United States*, 150 U. S. 91, it is said, " The right to exclude under particular circumstances may be supported as within the sound discretion of the trial court."    This right, where the party or his counsel has been in fault, is directly or by implication supported by various decisions, and sanctioned by text writers.    *State* v. *Gesell*, 124 Mo. 531.    *O'Bryan* v. *Allen*, 95 Mo. 68, 75.    *Dyer* v. *Morris*, 4 Mo. 214.    *State* v. *Thomas*, 111 Ind. 515.    *Burk* v. *Andis*, 98 Ind. 59, 64.    *Davis* v. *Byrd*, 94 Ind. 525.    *Jackson* v. *State*, 14 Ind. 327.    *Bird* v. *State*, 50

Ga. 585. *Hey* v. *Commonwealth*, 32 Grat. 946, 949. *Hubbard* v. *Hubbard*, 7 Oregon, 42. 1 Bish. Crim. Proc. § 1191. Whart. Crim. Ev. § 446.

The defendant's request for instructions as to the right of one who is attacked to pursue his adversary was rightly refused. There was no testimony in the case which tended to show that the defendant pursued his adversary after being attacked. On the other hand, his own testimony was explicit to the contrary. His account of the fatal occurrence was as follows: " As I was getting up, the man got his arm around my neck, and commenced to hit me in the face ; I could not do anything to save myself; I had no chance to get away from him ; I was stooping down, with his arm around my neck, and he commenced to hit me in the face, split my lip, and choked me, and took away my breath. My wind was right out of me ; I could not stand it a second longer. I had this knife in my hand, and I raised it up, when I felt his hold get loose of me. I did n't intend to kill him, — I did n't know that I had killed him." The instructions asked for were not applicable to the case in hand, and were rightly refused. *Drake* v. *Curtis*, 1 Cush. 395, 414. *Coker* v. *Ropes*, 125 Mass. 577. *Salomon* v. *Hathaway*, 126 Mass. 482. *Pratt* v. *Amherst*, 140 Mass. 167.

The defendant contends that the argument of the district attorney to the jury was objectionable in saying that " the defendant upon these facts might well have been indicted for the crime of murder." The indictment was for manslaughter. There was no statement by the district attorney of any fact not in evidence, and no misstatement of the evidence. The defendant's objection rests on the ground that this argument was a charge of an offence for which he was not on trial. But we see no legal error in allowing the district attorney to urge that the facts in evidence showed a homicide of a higher grade than that for which the defendant was indicted. Nor can we say that this view of the facts was not warranted by the evidence.

The points urged in support of the motion in arrest of judgment are covered by the recent decision in *Commonwealth* v. *Brown*, 167 Mass. 144.

*Exceptions overruled.*