## JANUARY TERM, 1900.

14   208
31s  156

### [No. 1730.]

### KELLY v. ATKINS ET AL.

1. FRAUDULENT CONVEYANCE—EVIDENCE.

Where the evidence of the parties to a trust deed from a husband to
his wife and its transfer to a brother of the husband was confused,
evasive and contradictory as to the consideration and a subsequent
mortgagee testified that at the time of the execution of his subse-
quent mortgage the parties to the former trust deed told him it
was executed only for the purpose of protecting the husband from
his creditors and that it had been released by an unrecorded deed,
a finding of the trial court that the trust deed was voluntary and
as to the subsequent purchaser fraudulent and void, will not be
disturbed.

2. EVIDENCE—EXCLUSION OF WITNESS FROM COURT ROOM.

Where a witness disobeys the rule excluding witnesses from the court
room during the trial, with the knowledge and consent of the party
seeking to introduce such witness, the court may in its discretion
refuse to permit such witness to testify in the case.

*Error to the District Court of Mesa County.*

Mr. JOHN MURPHY, for plaintiff in error.

Messrs. BUCKLIN, STALEY & SAFLEY, for defendants in
error.

THOMSON, J.

James M. Kelly brought suit to foreclose two trust deeds.
A decree was rendered foreclosing the first, but as none of
the parties complain of that decree, it will not be further
noticed. The second was executed on the 1st day of Sep-
tember, 1888, by William S. Kelly, and conveyed to L. D.
Christopher, as trustee, certain lands in Mesa county, to
secure the payment to Jennie Kelly of two notes of W. S.
Kelly to her, bearing the same date, for $625.17 and $2,067,
respectively, both payable three years from date. The deed
named the acting sheriff of Mesa county successor in trust.
The complaint alleged that these notes were indorsed and
transferred to James Kelly for a valuable consideration be-

fore their maturity, and that for a valuable consideration before their maturity, James Kelly indorsed and transferred them to the plaintiff. L. D. Christopher, the trustee, William Innis, the acting sheriff of Mesa county and successor in trust, and Pike C. Doyle, a purchaser of the property under a decree of foreclosure of a mortgage subsequent in time to the trust deed, but given to secure a prior debt to him, were made parties defendant. The defendant Doyle answered the complaint setting up the mortgage under which he claimed title, its foreclosure, the purchase of the property by him at a sale under the decree, and, the period for redemption having expired, the execution of a sheriff's deed to him for the land; averring that the notes from W. S. Kelly to Jennie Kelly were wholly without consideration, and, together with the trust deed to Christopher, were executed for the purpose of defrauding the creditors of W. S. Kelly; that James Kelly and James M. Kelly each knew at the time he received the transfer of the notes, of their want of consideration, and of the fraudulent purpose for which they were executed, and that the transfers were made and received without consideration, and with the fraudulent intent of all parties concerned to so complicate the situation as to render it impracticable for the creditors of W. S. Kelly to reach the property. The answer prayed a decree adjudging the trust deed void.

Jennie Kelly was the wife of W. S. Kelly; James Kelly was his father, and the plaintiff, James M. Kelly, was his brother. James Kelly died before the commencement of the suit. W. S. Kelly and Jennie Kelly were witnesses for the plaintiff, and the latter testified in his own behalf. Christopher and Innis were witnesses for Doyle, and he was a witness for himself.

Upon the evidence the court found that the notes executed by W. S. Kelly to Jennie Kelly, and the trust deeds securing them were voluntary and without consideration; that the plaintiff was not a *bona fide* holder of the notes and deed; and decreed that the trust deed was of no effect as against the title of the defendant Doyle. Among the reasons for the

decree, assigned by the court in an oral opinion delivered at the time, was the confused, evasive and contradictory testimony of the parties who came forward to sustain the trust deed, and the strong inference to which it led that the execution and transfer of the notes were without consideration and fraudulent. Without the advantage, which the trial court had, of seeing these witnesses, hearing them testify, and observing their appearance and comportment, and forming our opinion from their testimony as it appears on paper, the strictures passed by the court seem to us to have been fully warranted. W. S. Kelly and Jennie Kelly contradicted each other, and the story told by each was inconsistent with itself. As against them we should find no difficulty in believing the defendant Doyle, who testified that when they executed the mortgage to him they assured him that the trust deed of W. S. Kelly to Jennie, was given only for the purpose of protecting the former against his creditors, and that it had been released by a deed which did not, as yet, appear of record. The defendant Christopher also testified to statements by them that the purpose of the papers was to keep off creditors. From reading the evidence we can readily believe, with the trial court, that the intermediate assignment to James Kelly was also without consideration; and the plaintiff's statements as to the manner in which he obtained the papers have an appearance so suspicious, that, without impeaching circumstances, one would hesitate to believe them. But Christopher, the trustee, and Innis, the successor in trust, both testified to facts which would indicate that the plaintiff held the notes, not as owner, but in trust for W. S. Kelly and Jennie Kelly, and in furtherance of their scheme. We see no reason for questioning the conclusion which the trial court reached upon the evidence.

At the outset of the trial, on the application of Doyle, the court ordered that the witnesses on both sides be excluded from the court room until called, except the defendant, W. S. Kelly, who was permitted to remain for the purpose of assisting the plaintiff's attorneys. While the plaintiff was introducing his rebutting testimony, Jennie Kelly remained in

the court room, and heard her husband, W. S. Kelly, testify in contradiction of the statements of Doyle and Christopher. The plaintiff then offered her as a witness to corroborate her husband.    Doyle objected, for the reason that she had, notwithstanding the court's order, remained in the court room, and had listened to the testimony of her husband, and that to permit her to testify would be, in effect, to nullify the order.   The objection was sustained.   The ruling is assigned for error.   It appears that the presence of the witness during the examination of her husband was known to the plaintiff's counsel.   The prevailing doctrine is that the violation of such an order by a witness will not deprive the party, whose witness he is, of the benefit of his testimony, if the party himself is without fault.   1 Thompson on Trials, § 281.   But where the order has been disobeyed by the consent or procurement of the party seeking to use the witness, the court may, in the exercise of a sound discretion, refuse to receive the testimony.   *Dyer v. Morris*, 4 Mo. 214; *Keith v. Wilson*, 6 Mo. 435; *Bulliner v. People*, 95. Ill. 394.

This witness was certainly in the court room with the knowledge and consent of the plaintiff's counsel, and it has not been made clear to us, and we are unable to discover for ourselves, that there was any abuse of judicial discretion in enforcing the order.

We have considered every question preserved by the assignment of errors, and our conclusion is that the judgment should be affirmed.

*Affirmed.*