JOSEPHINE CROSBY, Respondent, v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, a Corporation, Appellant.

(222 N. W. 476.)

448

Opinion filed December 17, 1928.

*John E. Palmer, B. L. Wilson,* and *McGee & Goss,* for appellant.

*E. R. Sinkler* and *G. O. Brekke,* for respondent.

BURR, J. The plaintiff seeks to recover $20,000 from the defendant and alleges in her complaint, among other things, that on or about the 20th day of October, 1926, while riding in an automobile driven by another on the streets of Flaxton, she was injured, owing to the fact that while crossing the tracks of the defendant the employees of the said defendant were negligent in attempting to make what is known as a flying switch and in doing so caused a train of cars to cross said street at a dangerous and unlawful rate of speed so that the automobile was struck, the plaintiff thrown out and injured, and that during said time the plaintiff herself was not guilty of any negligence. She further alleges that during said time the defendant failed to have a bell rung, whistle sounded, or warning given of the approaching cars; and caused a train of cars to stand upon the sidetracks in such a way as to obscure the vision of persons desirous of crossing the tracks on said street. Defendant denies negligence and alleges that if the plaintiff be injured in any way it was solely on account of the negligence of the driver of the automobile, that plaintiff herself had ample opportunity to avoid injury and in any event was not injured at all.

This action was commenced in the county of Ward and in due time the defendant made a motion for a change of venue to the county of Burke on the ground, among others, that the plaintiff was a resident of Burke county; that if any accident occurred as she alleges in her complaint it happened in Burke county; that the plaintiff had previously commenced an action in Burke county against the defendant on the same cause of action; but dismissed the action without prejudice before final determination and later commenced the action in Ward county; that the convenience of witnesses demanded the change of place of trial from Ward county to Burke county; that defendant would require the testimony of some eighteen witnesses, of these it was more convenient for fourteen of them to attend trial in Burke county, three more were expert witnesses residing in the vicinity of Bowbells, and that it was more convenient for all of these to go to the county seat of Burke county for trial than to go an additional seventy-five miles to

Ward county. The motion for change of venue was opposed by the plaintiff, who set forth, among other things, that the convenience of her witnesses would require the trial of the case in Ward county; that the plaintiff was treated for her injuries by various doctors, physicians and nurses in Ward county, that it was necessary to have the testimony of such witnesses as well as the X-ray photographs taken in Minot by persons residing in Minot, and that it would cause plaintiff a great deal of expense to have her witnesses go to Bowbells for the trial of the case. The court denied the motion for a change of venue. At the commencement of the trial plaintiff moved that all witnesses be excluded from the court room during the trial of the action, and the court made an order excluding the witnesses from the court room during the trial of the action except the witness testifying. Just before both parties rested the defendant called one I. C. Shong as witness and the plaintiff objected to him testifying on the ground he had been in the court room all of the time of the trial and had thus violated the order of the court. The record in this matter is as follows:

I. C. Shong being first duly sworn, testified as follows:

By Mr. Goss:

Mr. Sinkler: Now, if your Honor please, this man has been in the court room all the time.

Mr. Goss: He has been in by the court's permission.

Mr. Sinkler: We object to him testifying on the ground that he has been in the court room all the time.

The court: Sustain the objection.

Mr. Goss: At this time I offer in evidence exhibit 1.

Mr. Sinkler: No objection to exhibit 1.

Both parties then rested. (Exhibit No. 1 is an alleged statement of the plaintiff made to some employee of the defendant shortly after the accident and has no bearing on the errors alleged.) The trial resulted in a verdict for the plaintiff against the defendant in the sum of $1,900, and an order for judgment was made and judgment entered thereon.

The plaintiff moved for a new trial specifying as error the points raised on this appeal. The court denied a new trial and the defendant appeals.

The specifications of error are three in number:

1. That the court erred in denying the change of venue;

2. That the court erred in refusing to permit the witness I. C. Shong to testify; and

3. That the court erred in denying a new trial on account of the excessiveness of the verdict.

This action is not one which must be tried "in the county in which the subject of the action or some part thereof is situated" or a case which "must be tried in the county where the cause or some part thereof arose" as provided for in §§ 7415 and 7416 of the Compiled Laws of 1913. This is an action brought against the defendant corporation alleged to be "organized and existing under and by virtue of the law of the state of North Dakota," and a public carrier, and under the provisions of § 4735 of the Code "any person . . . claiming to be damaged by any railroad, railroad corporation or common carrier . . . may bring suit in his . . . own behalf . . . for the recovery of damages for which any such railroad . . . may be liable . . . in any court of this state of competent jurisdiction . . ." Section 4735 of the Compiled Laws.

The plaintiff therefore had a right to bring this action in any county in the state as she saw fit. It is not the claim of the defendant that the action is not commenced in the proper county. It is its claim there should be a change of venue for "the convenience of witnesses." The defendant strenuously contends that bringing the former action in Burke county and dismissing it without prejudice has a bearing upon the good faith of the plaintiff in bringing the action in Ward county. It was immaterial where the former action was commenced. The burden of proof is upon the defendant to show that there should be a change of venue. See Curren v. Story, 41 N. D. 362, 170 N. W. 875; Kiley v. Meckler, ante, 217, 220 N. W. 926. It is not sufficient, however, to show that it would be more convenient for witnesses. The application must show that the ends of justice would be promoted by the change as well. See McConnon & Co. v. Sletten, 55 N. D. 388, 213 N. W. 483; Kiley v. Meckler, supra. The affidavit in support of the motion shows it would be more convenient for the defendant to have the case tried in Burke county. There is no showing that the ends of justice would be any better promoted in Burke county than in Ward

county. The rebutting affidavits furnished by the plaintiff shows that it would be for the convenience of her witnesses to have the case tried in Ward county. The appellant argues that the affidavit furnished by the plaintiff specified certain witnesses who were not called on the trial of the case. The fact that the development in the trial obviated the necessity for calling these witnesses has no bearing on the case. We must pass upon the application as it was presented to the court. The plaintiff had the right to choose whatever county she saw fit. She chose the one that would be most convenient for her witnesses. True, this would cause the defendant to bring on its own railroad a number of witnesses some seventy-five miles farther than it would otherwise do. We cannot say that this in itself was sufficient to require the court to grant the change of place, nor that the failure to do so was error. If the court granted the change of venue it certainly would inconvenience the plaintiff, and her doctors and nurses would have to be transported at her expense a distance of seventy-five miles. Most of the witnesses including the doctors of the defendant would be required to be transported over twenty-five miles in any event and the bringing of the action in Ward county merely added about seventy-five miles to the transportation. There is no error shown in the refusal to grant the change of venue.

The action of the court in refusing to permit the witness I. C. Shong to testify is urged as reversible error. The only record of this matter which was before the court at the time of this ruling is the record as hereinbefore set forth. There is nothing in the record to indicate, and it is not claimed by the respondent, that Shong was an officer of the defendant corporation. The most that can be said regarding his relationship to the defendant is that he was an employee whose business it was to investigate the accident—a sort of claim agent—and presumably employed generally and not for this special case.

It must be conceded that the court has the right, in the trial of a case, to exclude witnesses from the jury room. When it comes to the question of what shall be done when a witness who violates the rule is presented we find a sharp diversity of opinion. Some courts hold that it is within the sound discretion of the trial court whether the testimony of such witness shall be received. Hall v. State, 137 Ala. 44, .34 So. 680; Martin v. Com. 30 Ky. L. Rep. 1196, 100 S. W. 872;

Goon Bow v. People, 160 Ill. 438, 43 N. E. 593; Com. v. Crowley, 168 Mass. 121, 46 N. E. 416; Crawleigh v. Galveston, H. & S. A. R. Co. 28 Tex. Civ. App. 260, 67 S. W. 142. In Blackwell v. State, 29 Tex. App. 194, 15 S. W. 597, it is held that the discretion of the trial court excluding testimony of a witness who has violated his order will be presumed to have been correctly exercised until the contrary is shown. See also Sherwood v. State, 42 Tex. 498.

On the other hand some courts hold that the violation of such an order is not sufficient to justify the court in excluding the testimony of such witness, but that some other method should be adopted to punish him, "although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court." See Holder v. United States, 150 U. S. 91, 37 L. ed. 1010, 14 Sup. Ct. Rep. 10; State v. Falk, 46 Kan. 498, 26 Pac. 1024; Davis v. State, 120 Ga. 843, 48 S. E. 305. Here, however, the court says: "It has repeatedly been held that it is within the discretion of the trial judge to allow a witness to testify who has violated the rule for the sequestration of witnesses." See also Green v. State, 125 Ga. 742, 54 S. E. 724.

We believe the true rule is that punishment for the violation of such order should not be meted out to the party who calls the witness, unless it be shown that the witness violated the order with the knowledge, connivance and consent of the party calling him. It may not always be within the power of the party to keep his witnesses out of the room. The purpose of the trial is to ascertain the truth from all available sources, and unless the party calling the witness connived at the violation of the ruling he should not be punished. As said by the court in Davis v. Byrd, 94 Ind. 525: "A witness who disobeys the order of the court excluding him from the court room should be punished, and severely punished, for his disobedience, but this punishment should fall on the guilty person, and not on an innocent party. It is difficult to imagine any principal of law which will justify the punishment of an innocent party for the contumacious behavior of a witness. A litigant has no authority over the witnesses subpœnaed by him, and is not answerable for their wrongful conduct, and he ought not to be denied a right because a wrong has been committed for which he is neither morally nor legally responsible. It may be a very serious punishment to be deprived of the testimony of a witness, and if the

party is himself free from fault, this punishment should not be visited on him; if, however, he is in fault, if he has directly or indirectly influenced the witness to disobey the order of the court, or if he has knowingly suffered it, then it is but just that he should pay the penalty of his wrongful act by the loss of the witness's testimony." This principle has ample authority, and gives opportunity for the exercise of discretion on the part of the trial court. See State v. Gesell, 124 Mo. 531, 27 S. W. 1101; Murray v. Allerton, 3 Neb. (Unof.) 291, 91 N. W. 518; Vickers v. People, 31 Colo. 491, 73 Pac. 845, 12 Am. Crim. Rep. 631; People v. Boscovitch, 20 Cal. 436; Kelly v. Atkins, 14 Colo. App. 208, 59 Pac. 841; State v. King, 9 S. D. 628, 70 N. W. 1046; State v. Illomaki, 40 Wash. 629, 82 Pac. 873; Loose v. State, 120 Wis. 115, 97 N. W. 526. For a general discussion of the subject see note to State v. Hodge, as found in 9 Ann. Cas. 368. Also 26 R. C. L. 1058, and 38 Cyc. 1372.

It cannot be said that the defendant directly or indirectly influenced the witness to disobey the order of the court, or that the order of the court was violated with the knowledge, connivance or consent of the defendant. The nearest approach to this would be that the witness remained in the court room with the knowledge, consent and possibly under the direction of the counsel for the defendant. It would appear the counsel was of the impression that the witness was permitted to remain in the court room to assist him in marshaling the case. The defendant must necessarily act through its officers and agents and there is nothing whatever to indicate that any officer or agent authorized or connived at the disobedience of the order. The great aim of the trial is to ascertain the truth, to present to the jury all facts ascertainable and give to each party a full, fair and complete opportunity to present his side of the case. A party should not be deprived of this right except by his own act. It is not claimed the court made any investigation to find out whether the defendant directly or indirectly influenced the witness to disobey the order and all of the record, including the affidavits on motion for a new trial negative this thought. There is controversy between the parties as to whether the trial court permitted the witness to remain, and the court declined determining this on the ground the judge had no recollection of it. This, however, does not even intimate, much less prove, that the defendant advised or

encouraged a violation of the order, or even knew of it. We think therefore the court committed error in excluding this witness.

It is contended that though the court may not have been justified in excluding the witness, nevertheless the subsequent showing is of such a character as to show there was no reversible error.

At the time of this motion for a new trial the defendant presented affidavits tending to show that this witness was the "sole representative of said defendant;" that "he was and at all times herein mentioned has been the claim agent and as such the personal representative of the defendant supervising and directing the defense of this action," and that if the affiant had testified his testimony would have been in the main as follows: that while investigating the injuries of the driver of the car he called on the plaintiff; that he "told her the nature of his errand which was to take a statement from her regarding Mrs. Holmes's injury. She said she would be very glad to give me a statement and I took the statement, exhibit 1, from her then and there. After the taking of the statement we visited for about thirty minutes. Mrs. Crosby told me how fortunate she was to have gotten out of the accident without a scratch explaining to me how Mrs. Chezik was very nervous, started fumbling with the door, that she, Mrs. Crosby, was cool as a cucumber, she seen that no time was to be lost, she reached over Mrs. Chezik, opened the door and got out ahead of her without any injury. She said that Mrs. Chezik and Mrs. Wagner were very temperamental and got hysterical but that she wasn't affected in any way. She told me several times about how fortunate they were that no one was hurt, how bad it could have been and what a close call they all had except' Mrs. Holmes, who was hurt. She was very sorry for Mrs. Holmes. Said how terrible it was," that he afterwards saw her on the streets and she spoke to him cordially; that "she is apparently a strong, athletic-built woman and so acted at said times" that he saw her and both times were in the early part of December, 1927. Exhibit 1 purports to be a signed statement by the plaintiff made to this witness, relating and detailing the nature of the accident and extent of the injuries and presumably is a synopsis of all that she said to him at the time. This was offered in evidence and received without objection.

We are not in position to say that such testimony would not have influenced the jury either in the finding for the plaintiff or in the

amount of damages allowed. The jury might have believed the plaintiff was impeached on matters material to either of these issues. This would be the tendency of the testimony if believed by the jury. It is for the jury to say what weight should be given to such testimony. We believe the error is reversible, as depriving the defendant of an opportunity to fully and fairly present its case to the jury.

The remaining specification of error deals with the sufficiency of the evidence to justify the amount of damages allowed. We need not pass upon this as we believe a new trial should be granted and on this trial the testimony may differ in many respects so as to render any opinion on the weight of the evidence valueless. The judgment of the lower court is reversed and a new trial granted.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.