H. F. HINSON, *Plaintiff in Error*, v. THE STATE OF FLOR-IDA, *Defendant in Error*.

1. While a witness is not competent to testify to the reputation of another person unless he can say he believes he knows the general reputation of such person in the community, yet one who has been personally acquainted with another for a consid-erable length of time and who has been in a position where he probably would have heard that other's reputation talked about were it the subject of comment and who has never heard it questioned may testify to the good reputation of such person. Such a witness may testify to good reputation by say-ing that he has never heard anything said against the person.

2. The inquiry should be whether the witness knows the general reputation of the person whose character is in issue in the

given community and as to the trait or quality in question. When the witness answers that question in the affirmative the foundation for proving what that reputation is has been sufficiently laid and the witness thus laying such foundation should be permitted to go on and testify as to what the reputation is, without being interrupted by a cross-examination to test the extent and sources of his information as to such character. The proper practice is testing, by cross-examination, the extent and sources of the knowledge or information of such impeaching witness is to defer it until the witness has been turned over in regular order for cross-examination in general at the close of the examination-in-chief.

This case was decided by the court En Banc.

Writ of error to the Criminal Court of Record for Duval County.

The facts in the case are stated in the opinion of the court.

*Bryan & Bryan* and *I. L. Farris,* for Plaintiff in Error;

*Park Trammell,* Attorney General, for the State.

PARKHILL, J.—The plaintiff in error was convicted in the Criminal Court of Record for Duval County of grand larceny, and alleges error.

G. W. Russell testified that he had known the defendant about four years, E. N. Gasque had known him eight years, E. P. Douglass, City Marshall, had known him in Jacksonville since 1889, W. S. Seward had known him there eight or nine years before his arrest. We think these witnesses ought to have been permitted to testify as to general reputation of the defendant for honesty and integrity in the community where he lived prior to his arrest upon this charge, even though they admitted that

they had never heard any one discuss the defendant's reputation prior to that time.

A witness is not competent to testify to the reputation of another person unless he can say that he believes he knows the general reputation of such person in the community. While the knowledge of the witness must extend to the other's general reputation, one who has been personally acquainted with another for a considerable length of time, and who has been in a position where he probably would have heard that other's reputation talked about were it the subject of comment, as seems to be the case with the witnesses here, and who has never heard it questioned may testify to the good reputation of such person. Such a witness may testify to good reputation by saying that he has never heard anything said against the person. 3 Ency. of Ev., 43; 2 Wigmore on Ev., paragraphs 1612, 1614; People v. Van Gaasback, 189 N. Y. 408, 82 N. E. Rep. 718, 12 Ann. Cas. 745, text 750, where will be found a comprehensive note.

In Lemons v. State, 4 W. Va. 755, 6 Am. Rep. 293, the court points out that the absurdity of the rule against negative testimony becomes more apparent when it is remembered that the more unsullied and exalted the character, the less likely it is ever to be called in question, or spoken of, and consequently more difficult to sustain than characters of a far less worth, *because* the latter had been the subject of conversation and speculation in the community, while the former had not.

We observe that in several instances, after the witnesses had answered the preliminary question and before saying what the reputation of the defendant was, they were cross-examined as to the grounds for their belief that they had such knowledge. We notice also that some times the witnesses were asked if they knew the reputation, not the

general reputation, of the defendant in the community for honesty.

The inquiry should be whether the witness knows the general reputation of the person whose character is in issue in the given community, and as to the trait or quality in question. When the witness answers that question in the affirmative, the foundation for proving what that reputation is has been sufficiently laid, and the witness thus laying such foundation should be permitted to go on and testify as to what the reputation is, without being interrupted by a cross-examination to test the extent and sources of his information as to such character. The proper practice in testing, by cross-examination, the extent and sources of the knowledge or information of such impeaching witness is to defer it until the witness has been turned over in regular order for cross-examination in general at the close of the examination-in-chief. Nelson v. State, 32 Fla. 244, 13 South. Rep. 361.

The judgment is reversed.

All concur, except TAYLOR, J., absent on account of illness.