ALLEN ROWE v. STATE.
163 So. 22.
Division A.
Opinion Filed August 28, 1935.

*William J. Ray* and *L. W. Hardy,* for Plaintiff in Error; *Cary D. Landis,* Attorney General, and *Dewey A. Dye,* State Attorney, for the State.

PER CURIAM.—Allen Rowe was indicted for the murder of Marvin B. Walker, and convicted of murder in the first degree with recommendation to mercy. He was sentenced to life imprisonment and took out writ of error.

On the night of the homicide, the defendant in company with others motored to the house of deceased, sat in the car and honked the horn. Two sons of deceased, Norman and Huston, came out to the car. Defendant, who did most of the talking, inquired about the man who vaccinated hogs and when he would return. The boys promised to let defendant know so he could have his hogs vaccinated. They

had more conversation about hogs. Then defendant asked where their father was, and the boys told him that he had gone to Plant City with some beef. The boys said defendant also inquired as to when deceased would be back and whether he was alone.

After this visit was over the occupants of the car returned to the home of defendant. Upon their arrival there, it was suggested by James Benton, one of the occupants of the car, that they go to Charlie Johnson's to get his cap, as he intended going to Fort Myers the following day and would need it, and that they hunt rabbits on the way.

After Benton got his cap at Charlie Johnson's, the occupants in the car started back towards defendant's house, when they met deceased in his Ford "pick-up" truck. As their car passed that of deceased, defendant said, "Hello, Mr. Walker"; and Walker answered, "Hello, Mr. Rowe." Then deceased said he wanted to see defendant and told him to stop at the intersection of the road leading off to deceased's house.

When both cars got to the intersection and stopped, defendant and deceased both exchanged words of apparently friendly greeting to each other. Deceased then said wait a minute until he turned off the lights on his truck, and walked back to his truck.

When deceased reached the truck, he turned off the lights and then took out his shot gun. The State witness, Mr. Simmons, testified that both defendant and deceased were getting their respective guns out of their cars at about the same time; that defendant had previously told Mr. Simmons that there might be trouble at that place; that when deceased had his gun about two-thirds of the way out of his truck, defendant alighted from his car with gun, made one step and shot at Walker once, then got closer and shot at

Walker a second time. The defense witnesses, Mrs. Simmons, Benton and defendant, said that after deceased had switched off the lights on his truck, he got his shot gun and, after declaring he now had defendant where he wanted him, fired at defendant, but missed him; that defendant then ran back to his car, got his shot gun and fired at deceased and killed him, while deceased was attempting to reload his gun.

There was evidence that two of defendant's horses and some of his hogs had died; and further evidence that deceased might have been the cause of it; and that deceased was trying to run defendant away from that neighborhood. There was evidence that deceased had made a threat on the life of defendant, though it was not communicated to defendant.

There was conflicting testimony as to whether the empty shell, found directly behind deceased's truck, came from defendant's gun or from that of deceased, or whether it was possible for it to come from the gun of deceased.

The first error assigned is the overruling of objection to the question asking the size of deceased's family. The record shows that the witness had answered the question before counsel had finished making his objection thereto. No motion to strike was made as to the answer.

The fact that deceased may have had a family is wholly immaterial, irrelevant and impertinent to any issue in the case. Melbourne v. State, 51 Fla. 69, 40 So. 189. It was held irrelevant in State v. Broughton, 158 La. 1045, 105 So. 59. Also see: Fisher v. State, 23 Ala. App. 544, 129 So. 303; Thomas v. State, 18 Ala. App. 268, 90 So. 878.

"The purpose of an objection being to prevent a question from being answered until after a ruling of the court can be obtained, it is well settled that it is too late to interpose

an objection after the question has been answered." 26 R. C. L. 1046, Sec. 55, and cases there cited.

The second error assigned is the overruling of objection to the question propounded to Sheriff James P. Davidson asking whether the empty shell found behind deceased's truck had been ejected from deceased's gun. The witness gave this answer to the question:

"A. Had that shell been ejected from the gun unbreached there, it would have been nearer the front wheel; it was in the opposite direction from where it would have been had it been ejected from this gun."

Counsel stated in his objection that the witness was assuming that at the time the shell was ejected, the gun was in the same position as when witness found it. No motion to strike was made as to the answer given. It was important to know from whose gun the empty shell came. If it came from deceased's gun, the defendant might have fired in self-defense, whereas if it came from the gun of defendant, it might be a case of murder in the first degree.

This assignment is open to the same objection as the first one in that no motion to strike was made after the answer was given. However, in the case of Blackwell·v. State, 76 Fla. 124, 79 So. 731, 1 A. L. R. 502, where the trial court permitted the Sheriff to testify that he believed sufficient evidence had been adduced to convict defendants and no timely objections had been made, the Court said:

"Although there was no objection by the defense to this opinion of the Sheriff that there was sufficient evidence before the jury to convict the prisoners, it was so flagrantly improper that it should have been stricken by the court of its own motion. But it remained in, and the jury carried with them into the jury room the opinion of the Sheriff, who is a man of great influence in the county, that there

was sufficient testimony before them upon which to find a verdict of guilty."

So in this case the Sheriff's opinion testimony that the shell was not ejected from deceased's gun was inadmissible.

The third assignment of error is based on the court's refusal to allow James Benton to answer the question as to whether or not the last words of deceased were threatening. The trial court ruled correctly. The witness had testified what the last words of deceased were, and this question sought a conclusion of the witness as to the threatening nature of those words, which conclusion the jury could determine for themselves.

The defense attorney was apparently trying to ask whether the attitude of the deceased was threatening when those words were uttered. Such a question might have been proper. Later the witness substantially testified to the same matter; so no harm could have resulted to defendant. See: Branch v. State, 96 Fla. 307, 118 So. 13.

The fourth assignment of error is based on the court's refusal to permit defendant to testify as to whether or not he had any feeling that in case he did not protect himself he might be killed by Mr. Walker. The defendant's belief as to the necessity of killing is material. See: Lane v. State, 44 Fla. 105, 32 So. 896. Such belief must be that the danger was imminent. Ward v. State, 75 Fla. 756, 79 So. 699. It is error to exclude such testimony. However, as the same witness later testified as to that particular matter, any error in excluding it was thereby rendered harmless. Baker v. State, 30 Fla. 41, 11 So. 492.

The fifth assignment contended that it was error to admit in evidence shot gun shells fired in deceased's shot gun to show their dissimilarity with the one found at the scene of the homicide. The purpose of the introduction of these

shells was to negative the idea that the shell found at the scene of the homicide had been fired in deceased's gun. This was an important point in the case and such evidence was relevant to the issue. No error is made to appear in its introduction.

The sixth and seventh assignments of error relate to the question asked Deputy Sheriff Murphy as to how far an ordinary smooth bore, twelve-gauge shot gun, firing a shell of that type, would make a powder burn on a man's face; and the answer given thereto:

"A. Not to exceed three feet."

The witness admitted that he had no experience in measuring distances at which powder burns would be inflicted on human flesh. It was important to know how far the gun could have been from deceased because the closer the gun, the greater the probability that defendant was the aggressor. Testimony of this witness in regard to the probable distance of said described shot gun from a man's face when powder burns would be inflicted thereon by firing said gun was improper under the circumstances and should have been stricken because the witness had not qualified as an expert in that particular line.

"He must have acquired such special knowledge of the subject matter about which he is to testify, either by study of the recognized authorities on the subject or by practical experience, that he can give the jury assistance and guidance in solving a problem to which their equipment of good judgment and average knowledge is inadequate." 11 R. C. L. 574.

The witness was not qualified on cross examination, and his lack of qualification to testify on this subject was further shown.

This Court in McLendon v. State, 90 Fla. 272, 105 So.

406, and in Lawrence v. State, 45 Fla. 42, 34 So. 87, cited with approval the rule in 12 Am. & Eng. Encyc. of Law (2d Ed.) 406, part of which is:

∴ "Thus, where a material question was the distance between the muzzle of the gun and the body of the victim of an alleged murderous design, evidence was excluded of the result of experiments as to powder marks upon pasteboard targets by firing a gun at varying distances, upon the ground that the human body is fundamentally different in nature and texture from the substance upon which the experiments were made."

The eighth assignment of error is based on the action of the trial court in permitting witness Owen Simmons to testify in rebuttal after standing during part of the trial in the open doorway between the court room and judge's chambers, all witnesses being under the rule.

There are different views taken of this matter by the different courts. See: 9 Ann. Cas. 368-371 Note. The better view seems to be that where the witness had violated the rule, it is within the discretion of the trial court to admit his testimony. See: 9 Ann. Cas. 368 Note and cases there cited. A witness who has violated the rule may be called upon to testify in rebuttal. See: Goins v. State, 41 Tex. 334; International & G. N. R. Co. v. Hugen, 45 Tex. Civ. App. 326, 100 S. W. 1000; also Ferguson v. Brown, 75 Miss. 214, 21 So. 603; Illinois Cent. R. Co. v. Ely, 83 Miss. 519, 35 So. 873. The discretion of the trial court in receiving or excluding the testimony of a witness who has violated its order will be presumed to have been correctly exercised until the contrary is shown. Sherwood v. State, 42 Tex. 498; Blackwell v. State, 29 Tex. App. 194, 15 S. W. 597. If the violation of the order of the court by the witness is participated in by the party calling the witness

or by the attorney representing such party, testimony of that witness will be excluded. See: Jackson v. State, 14 Ind. 327; Dyer v. Morris, 4 Mo. 214; State v. Gesell, 124 Mo. 531, 27 S. W. 1101; Hubbard v. Hubbard, 7 Ore. 42. Such witness may be punished for contempt of court. See: 9 Ann. Cas. 371 Note and cases there cited.

The ninth assignment of errors is based on the admission of testimony as to the attitude, demeanor and expression of defendant at the time of his arrest. The purpose of this testimony was to impeach defendant's testimony. No error is made to appear in its introduction.

The tenth assignment of error is the overruling of motion for new trial. The motion for new trial made by defendant below, although it might have been meritorious, cannot be considered on writ of error because it was made more than four days after the verdict was rendered, contrary to provisions of Statute 4497 C. G. L. See Kirkland v. State, 70 Fla. 584, 70 So. 592; Koon v. State, 72 Fla. 148, 72 So. 673; Baxley v. State, 72 Fla. 228, 72 So. 677; Holmes v. State, 89 Fla. 336, 103 So. 642; McLendon v. State, 90 Fla. 272, 105 So. 406.

Reversed for a new trial.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur.

BUFORD, J., concurs in the opinion and judgment.