245 So.2d 68 (1971)
Bill BROWN, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 39074.
Supreme Court of Florida.
February 17, 1971.
Rehearing Denied March 25, 1971.
*69 Thomas M. Ervin, Jr., of Ervin, Pennington, Varn & Jacobs, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen., and J. Christian Meffert, Asst. Atty. Gen., for appellee.
ADKINS, Justice.
This is a direct appeal from a judgment adjudging Defendant guilty of murder in the first degree and a sentence of death.
Defendant, Bill Brown, Jr., and Nathaniel Grimes, were indicted for murder in the first degree. The indictment charged that, from a premeditated design to effect the death of Walter A. Minski the codefendant killed him by shooting him with a pistol. Before his death, Mr. Minski said he was shot by two colored men in stocking masks during an attempt to rob him at a motel in Tallahassee.
A severance was granted and Defendant Bill Brown, Jr. was found guilty of murder in the first degree without a recommendation of mercy. The cause is now before us on appeal from the judgment and sentence.
Prior to trial, the Defendant by motion invoked the provisions of F.Cr.P.R. Rule 1.210(a), 33 F.S.A. for the purpose of determining Defendant's mental condition at the time of trial.
In support of this motion, Defendant submitted a psychiatric report from the Georgia Industrial Institute indicating as to Defendant a state of chronic undifferentiated type schizophrenia, mental deficiency, *70 and borderline psychosis as of June 29, 1966. At the time of the report supportive psychotherapy was recommended.
Experts were appointed by the Court to examine Defendant. One expert, a psychologist, stated that he didn't feel he could give a valid estimate of Defendant's competency, but that objective test results indicated an I-Q level of 35 which is in the severely retarded range. A psychiatrist appointed by the Court concluded that, although Defendant was mentally deficient, there was no evidence of frank psychiatric illness; that Defendant appeared to know the difference between right and wrong; that he appeared capable of assisting in his own defense; and that, in the opinion of the psychiatrist, Defendant was competent to stand trial.
Defendant then requested further examination by experts. The Court, in entering an order finding the Defendant sane and capable of standing trial, recited that the reports of the experts previously appointed to examine the Defendant had been examined, and that the attorney for Defendant had announced that he had no testimony to offer and did not wish to cross-examine the experts who rendered the written reports. The Court in its order also found that no useful purpose could be served by any further examination.
In view of the report from the Georgia Industrial Institute and in view of the finding of the Court in the original order appointing experts that there was reasonable ground to believe the Defendant might be insane, Defendant now contends that the Court erred in not granting a further examination regarding Defendant's competency to stand trial.
At common law, if at any time while criminal proceedings are pending against a person accused of crime, whether before or during or after the trial, the trial court either from observation or upon the suggestion of counsel has facts brought to its attention which raise a doubt of the sanity of the Defendant, the question should be settled before further steps are taken. See State ex rel. Deeb v. Fabisinski, 111 Fla. 454, 152 So. 207, 211 (1933). Where no doubt is created in the mind of the Court as to the present sanity of the Defendant, it is under no obligation to have the question determined. Southworth v. State, 98 Fla. 1184, 125 So. 345, 347 (1929).
The method of settling this question is prescribed by F.Cr.P.R. Rule 1.210 (a), which authorizes the appointment of "not exceeding three disinterested qualified experts" to examine the Defendant if the Court "has reasonable ground to believe" that the Defendant is insane. The fact that the Court may have reasonable ground to believe that the Defendant is insane and appoints experts to examine Defendant places no burden on the State of proving the sanity of the Defendant. See Child v. Wainwright, 148 So.2d 526 (Fla. 1963). The report on the Defendant's sanity by a psychiatrist or other expert is merely advisory to the Court, which itself retains the responsibility of the decision. 23 C.J.S. Criminal Law § 940(5), p. 746. As stated in Brock v. State, 69 So.2d 344 (Fla. 1954):
"The trial court appointed a psychiatrist and a physician to conduct the examination. The psychiatrist concluded that the defendant was sane. The physician concluded that he was insane. On this and other evidence adduced at an open hearing the trial judge concluded that the accused was legally sane and that the trial should go forward. We find no error in this ruling.
"Under our statute, as at common law, a hearing upon the issue is obligatory if a reasonable doubt is raised as to the defendant's sanity. Sec. 917.01, Florida Statutes 1951, F.S.A.; 14 Am.Jur., Criminal Law, sec. 44. The general rule is that `the report on accused's sanity by the * * * investigating body is merely advisory to the court, which itself retains the responsibility of decision'. * * * And even prior to the enactment *71 of Chapter 917, Florida Statutes, the law was settled in this state that `the circuit court which has jurisdiction of the offense has ample means and power to determine the question of mental ability of the person accused to plead to the indictment and prepare his defense'. State ex rel. Deeb v. Fabisinski, 111 Fla. 454, 152 So. 207, 211, 156 So. 261. In the trial of that issue `the burden is on [the accused] to show insanity, by a preponderance of the evidence', 23 C.J.S., Criminal Law, § 940, p. 240, and the trial court's ruling in such a case, being a discretionary one, should not be disturbed unless the evidence is such as to show an abuse of discretion. See Stanton v. State, 148 Fla. 732, 5 So.2d 4." (Pp. 345, 346.)
The purpose of the provisions of Rule 1.210(a), supra, was to aid and assist the Court, so as to enable the Court wisely to determine whether the Defendant is in such a mental state that further proceedings in any pending criminal case must be proceeded with or stayed during a period of necessary treatment. The Defendant has failed to show an abuse of discretion by the trial judge in making the determination as to Defendant's mental capacity.
Defendant says that the trial court committed error by denying his request for an examination regarding his sanity at the time of the alleged offense. F.Cr.P.R. Rule 1.210(b), which reads the same as Fla. Stat. § 909.17, F.S.A., requires the Defendant to give notice of his intention to rely upon the defense of insanity either at arraignment or prior thereto. He is also required to file a statement of particulars showing as nearly as he can the nature of insanity he expects to prove and the names and addresses of the witnesses by whom he expects to prove such insanity. Rule 1.210(c) prescribes the procedure for the appointment of expert witnesses in the event the existence of insanity on the part of the Defendant at the time of the alleged commission of the offense charged becomes an issue in the cause. The record does not show that the notice of intention to rely upon the defense of insanity was given at arraignment or prior thereto, but Rule 1.210(b) provides that the Court may nevertheless, in its discretion, permit the introduction of evidence of such defense upon good cause shown for the omission of the notice.
Defendant's motion for mental examination to determine his sanity at the time of trial (under Rule 1.210(a)), states "that the sanity of the defendant at the time of the alleged commission of the offense has become an issue in this cause." Also, in his renewal of the motion for examination of Defendant there was a request that experts be appointed to examine him in regard to his sanity at the time of the commission of the alleged offense. The Defendant in the subsequent motion sought additional time "to give notice of whether insanity will be relied on as one of the defenses of the defendant." Defendant relies heavily upon the 1966 report of the Georgia Industrial Institute concerning the mental deficiency of the Defendant. Testimony bearing upon whether or not Defendant was mentally deficient would be irrelevant to the issue of legal insanity under the standard set forth by the McNaghten Rule, to which this State is committed. See Evans v. State, 140 So.2d 348 (Fla. App.2d 1962); Dampier v. State, 180 So.2d 183 (Fla.App.1st, 1965).
The enactment of Fla. Stat. § 909.17, F.S.A., and the adoption of Rule 1.210(b) were for the benefit of the State in order to obtain pretrial discovery by the prosecution and were not primarily for the benefit of the Defendant. Lee v. State, 214 So.2d 46 (Fla.App.4th, 1968). The Defendant does not say that the trial court excluded any testimony on the question of sanity, but merely complains because additional experts were not appointed to examine the Defendant. The failure to appoint an expert would not preclude the Defendant from the use of expert or nonexpert witnesses. This Court has held that nonexpert witnesses can detail facts known to *72 them which show insanity and thereupon express an opinion as to the sanity of the person whose mental condition is being investigated. Of course, the value of such testimony would depend largely upon the opportunities of the witnesses to observe the appearances and conduct of the person whose mind is claimed to be unsound. See Armstrong v. State, 30 Fla. 170, 11 So. 618, 17 L.R.A. 484 (1892); Blocker v. State, 92 Fla. 878, 110 So. 547 (1926).
There was no error in the denial of Defendant's request for a further mental examination.
The Defendant also contends that the denial of a further mental examination deprived him of due process of law in that he could not secure evidence regarding the voluntariness and admissibility of his alleged confession.
Confessions are not deemed voluntary as a matter of law. To be admissible in evidence they must be made by one competent to make them and they must not be induced by punishment, threats or promises of reward.
When it is clearly established that at the time of making a confession the accused was insane, the purported confession is not admissible in evidence. The test is whether or not the Defendant would be competent as a witness. It is well settled that a person is not necessarily incompetent as a witness because he is mentally weak, and a confession is not rendered inadmissible by a low emotional and mental stability on the part of the accused if he is nevertheless capable of understanding the meaning and effect of his confession. 23 C.J.S. Criminal Law § 828. See Cullaro v. State, 97 So.2d 40 (Fla.App.2d, 1957).
However, a confession is not admissible in evidence if the mental condition of accused at the time of the confession, or immediately prior thereto, was such as to show that the confession was not freely and voluntarily made. 23 C.J.S. Criminal Law § 828. In the case sub judice, the trial court had already determined defendant to be sane and competent to stand trial. Experts had already been appointed by the Court for the determination of this question and the trial court did not abuse its discretion in failing to provide for a further mental examination.
Defendant next says that the prosecution failed to establish that his alleged confession was voluntary. It is well settled that to render a confession voluntary and admissible in evidence, the mind of the accused must at the time be free to act, uninfluenced by fear or hope. The Court should determine this important question. Green v. State, 40 Fla. 474, 24 So. 537 (1898); Thomas v. State, 92 So.2d 621 (Fla. 1957). The question of admissibility is a mixed question of law and fact determined by the trial judge from a preliminary consideration of the evidence offered by either party bearing upon the circumstances, conditions, and surroundings under which the confession was made, which may include evidence of the age, sex, disposition, experience, character, education, intelligence, previous training, and mental condition of the accused. Of course, all confessions of the accused should be acted upon by the Court with great caution. See cases cited, 6 F.L.P., Criminal Law, § 442, p. 423.
When it is made to appear prima facie that the confession was freely and voluntarily made, uninfluenced by the attending circumstances or by inducements, the burden is then cast upon Defendant to show that it was in fact not a voluntary confession. Sims v. State, 59 Fla. 38, 52 So. 198 (1910); Cawthon v. State, 118 Fla. 394, 159 So. 366 (1935).
The Defendant attaches some importance to his request for a preacher either before or after the statement was made. One officer testified that Defendant was told he could see a preacher when he finished the statement. This testimony does not affect the voluntary nature of the confession. See Ebert v. State, 140 So.2d 63 (Fla.App. *73 2d, 1962), where the Court held that the Defendant's hope "of bettering his spiritual condition" did not render his confession involuntary.
After the Defendant had been questioned by the officers for approximately a half hour, he was placed in a room with his codefendant Nathaniel Grimes. Grimes was in custody and had already confessed. None of the officers listened to any conversation between Grimes and the Defendant and there is no testimony concerning any conversation that took place between Grimes and the Defendant when they were alone. Defendant asserts that this meeting created a "gap" in the proceedings and infers that "coercion" may have resulted therefrom. The fact that codefendants are allowed to talk privately, when one has confessed, does not raise any presumption or inference that coercion was exerted by the codefendant who had admitted his guilt.
The record conclusively supports the able trial judge's finding that the statements made by the Defendant were freely and voluntarily given and were obtained by the investigating officers only after Defendant was properly advised of his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
Defendant next contends that the alleged murder weapon was secured by police as the result of an illegal and unconstitutional search and seizure.
The weapon in question was taken by officers of the Thomasville, Georgia police department who were the arresting officers. One of the officers had been advised by police bulletin to be on the lookout for an automobile of a certain description which was believed to have been used during the armed robbery the previous day in Tallahassee, Florida. This officer and his companion officer sighted an automobile fitting the description parked in front of the residence of Nathaniel Grimes, Jr. After surveillance for a limited time, Grimes came out of the house, opened the door of the automobile, and took out a jacket. At this point the officers intercepted Grimes. They did not possess an arrest warrant for Grimes or a search warrant for his residence. After Grimes was taken into custody an officer asked him who was inside the house. Grimes informed the officers that only his wife and child were there and gave them permission to verify the fact that there were no other persons in the house. The officers entered the house and determined that there were no other persons present, but did not make a detailed search at that moment.
Grimes was then brought into the hallway of the residence, advised that he was under arrest, was frisked, and his hands were placed in handcuffs. Upon the request of an officer, Grimes gave them permission to search the house. One of the officers proceeded into a separate bedroom where he found the pistol in question in the pocket of a blue bathrobe.
In denying Defendant's motion to suppress, the trial court said:
"The Court is of the view that considering all of the circumstances, that Captain Lane and Sergeant Barkley acted reasonably, intelligently, and that what search was made was not an unreasonable search considering all the circumstances that were involved. In view of the information that they had had, and in view of the precautions which an officer would certainly be expected to take, and the absence of any real disturbing of the premises themselves in connection with it, no breaking of doors or going into cabinets or that sort of thing, I consider that the property that was taken in connection with the arrest of the defendant Grimes in this case was proper and legal in every respect, so the motion will be denied. Both motions will be denied."
The Defendant Brown was not present at the time of arrest of Grimes nor was he present at the time of the search. Defendant says that he nevertheless has *74 "standing" to object to the search as he had been in the house at a previous time and evidence illegally seized may not be used against him even if he were not present at the time of the search.
The principle is well established that
"* * * suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." Alderman v. United States, 394 U.S. 165, 171, 172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969); reh. den. Ivanov v. United States, 394 U.S. 939, 89 S.Ct. 1177, 22 L.Ed.2d 475.
The restrictions upon search and seizure were obviously designed against official invasion of privacy and the security of property. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Defendant argues that his legitimate presence in the house of Grimes the day before the search should give him the necessary standing to question the legality of the search, but, in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Court explained that, although a person aggrieved by an unlawful search and seizure need not have a possessory interest in the searched premises in order to complain, under such circumstances he must be legitimately on the premises when the search occurs. The Defendant in the case sub judice possesses no standing to complain of any alleged illegal search and seizure. Art. 1, § 12, Fla. Const. (1968), F.S.A. does not change this rule.
Conceding arguendo that Defendant could raise the issue of an illegal search and seizure, the record clearly shows that Grimes, prior to the alleged search, was advised of his constitutional rights and consented to the request of the arresting officer to "look around the house." The test, as set forth by this Court in Jackson v. State, 132 So.2d 596 (Fla. 1961), requiring a consent to search to be freely and voluntarily made, has been met. The fact that Grimes was under arrest and in custody at the time the consent to search was given does not render that consent involuntary as a matter of law. See Davis v. State, 226 So.2d 257 (Fla.App.2d, 1969), where an oral consent to search defendant's apartment was upheld even though defendant was arrested away from his apartment and refused to sign a written consent.
Grimes was arrested for the shooting of a man the night before and the officers had probable cause to believe the weapon involved was located nearby. With the consent of Grimes one officer stepped into a bedroom approximately six or eight feet away and noticed a bathrobe hanging on a bed post. Upon lifting the robe the officer noticed an open pocket containing the pistol. Under the circumstances the search and seizure were reasonable and the motion to suppress was properly denied.
The trial court refused to give Defendant's requested instructions on the purported lesser included offenses of aggravated assault, assault and battery, and attempt to commit armed robbery. The Defendant says that such instructions should have been given under our decision in Brown v. State, 206 So.2d 377 (Fla. 1968).
These offenses are not necessarily included offenses of the charge of murder in the first degree.
In Sadler v. State, 222 So.2d 797 (Fla.App.2d, 1969), the trial court refused to charge on the crimes of assault with attempt to commit a felony, aggravated assault, assault and battery and simple assault as necessarily included offenses of a first degree murder charge. Just as in the case sub judice, the trial judge had instructed *75 the jury as to all degrees of murder, manslaughter, and justifiable and excusable homicide. In holding that the trial court did not commit error, the District Court said:
"The trial Judge did appropriately instruct the jury as to all degrees of murder, manslaughter, justifiable homicide, and excusable homicide, all having to do with the death of the victim. This was proper. The indictment charged a death, and the proof established that the victim here, Diane, died almost instantly from a knife stabbed into her heart. It is not questioned that a homicide took place. The instructions questioned by defendant were not necessarily included in murder, or lawful or unlawful homicide.
"Defendant cites the case of Brown v. State, Fla. 1968, 206 So.2d 377, but we do not believe the Supreme Court in Brown meant to say that, in a first degree murder case, as distinguished from a case charging robbery, arson, etc., the trial Judge should charge on otherwise substantive minor offenses such as simple assault, assault and battery, aggravated assault, or assault with intent to commit a felony, on the theory that the latter are all lesser included offenses of first degree murder.
"What the trial Court was concerned with in the instant case was to properly and sufficiently instruct the jury as to the various degrees of unlawful homicide and of justifiable and excusable homicide.
"* * *
"What we have here was either unlawful homicide or lawful homicide. The death of a human being at the hands of defendant Sadler was concededly involved. If defendant's contention as to `lesser included offenses' is sound, then the trial Judge would have been required, upon request, to run down the gamut of the criminal lexicon to minor petty offenses such as disorderly conduct or disturbing the peace. This was a death case, not an assault case. We hold there is no merit to this point." (pp. 799, 800)
State v. Smith, 240 So.2d 807 (Fla. 1970), involved a conviction of conspiracy to commit assault and battery upon an information charging conspiracy to commit murder in the first degree. An instruction on conspiracy to commit assault and battery was given by the Criminal Court of Record trial judge without objection by the Defendant. In view of the nature of the charge, i.e., conspiracy to commit murder in the first degree, and the failure of the Defendant to object to the giving of the instruction, we held that there was no fundamental error which would warrant the quashal in certiorari by the District Court of Appeal of an affirmance by the circuit court acting in an appellate capacity. We did not hold that the crime of conspiracy to commit assault and battery is a necessarily included offense in a charge of conspiracy with intent to commit murder in the first degree. Our decision in the case sub judice in no way conflicts with State v. Smith, supra.
As required by Fla. Stat. § 924.32(2) F.S.A., we have carefully reviewed the evidence to determine if the interest of justice requires a new trial. The evidence supports the verdict and judgment.
The judgment is affirmed.
ROBERTS, C.J., CARLTON, BOYD and DREW (Ret.), JJ., and SPECTOR, District Court Judge, concur.