256 So.2d 19 (1971)
Anderson SCOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 70-608.
District Court of Appeal of Florida, Fourth District.
December 15, 1971.
Walter N. Colbath, Jr., Public Defender, and Norman J. Kapner, Asst. Public Defender, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, Charles W. Musgrove, and Andrew I. Friedrich, Asst. Attys. Gen., West Palm Beach, for appellee.
WALDEN, Judge.
Defendant was convicted of murder and appeals. We affirm.
He queries:
Did the trial court err in allowing over defendant's objection, the mother of the deceased to testify as to his identity in view of the availability of other witnesses for this purpose who were not members of decedent's family?
It is a well and long established rule in Florida that a member of the deceased *20 victim's family may not testify for the purpose of identifying the victim where non-related witnesses are available to make such identification. See Melbourne v. State, 1906, 51 Fla. 69, 40 So. 189; Rowe v. State, 1935, 120 Fla. 649, 163 So. 22; Hathaway v. State, Fla.App. 1958, 100 So.2d 662; Gibson v. State, Fla.App. 1966, 191 So.2d 58.
In the instant case the mother of the victim testified and established the identity of the deceased, although other witnesses not related to the decedent were available and could have been used to satisfy the identification requirement.
If there were not more than the foregoing we would necessarily reverse the judgment of conviction. But other circumstances were present which prompt us to term the violation of the rule as harmless error or, perhaps equally, to say that the use of the mother's testimony fell within an exception to the rule.
Defendant admitted shooting the decedent, but claimed that it was done in selfdefense.
On the day of the shooting there was testimony that decedent threatened defendant with a knife, cutting him a little. Someone intervened before things got further out of control. That same evening decedent again threatened defendant with a knife. After this last episode, according to defendant's version, defendant went outside, with a gun, to give it to a friend for safekeeping while defendant was away on a short trip. Defendant was again met by decedent brandishing a knife. As decedent advanced defendant shot twice wildly. Decedent still advanced until fatally struck by defendant's third shot.
The state says no eyewitness saw decedent with a knife at the time of the fatal shooting. In fact, his knife was found in his pocket unopened. Defendant explained this latter fact by tracing the various places the body was taken before the knife was found and questioning the reliability of the discovery.
In light of this it was important for the prosecution to prove, if it could, that the knife was in the decedent's pocket at the time of the shooting. Excerpts from the mother's testimony are:
"Q. All right. Miss Rawls, was Willie T. Rawls your son?
"A. Yes, sir.
"Q. You remember, I'm sure, when he was shot?
"A. Yes, sir.
"Q. Okay. Did you go to the hospital?
"A. Yes, sir.
"Q. Did you see him there?
"A. Yes, sir.
"Q. Was he later pronounced dead?
"A. Yes, sir.
* * * * * *
"Q. Miss Rawls, were you given a paper bag containing some clothes while you were at the hospital?
"A. Yes, sir.
* * * * * *
"Q. Was it shortly after you got there or after you'd been there a while?
"A. I had been there a while.
* * * * * *
"Q. Now, who gave you those clothes?
"A. One of the men who undressed him there at Orange Memorial Hospital.
"Q. Now, was he an orderly or something?
"A. I guess you might say that's what it was.
"Q. Okay. And did you ... What were the clothes in?
"A. In a brown bag.
"Q. Okay. Did you look through the clothes?

*21 "A. No, sir, I didn't.
"Q. You just took the bag and you held it?
"A. Yes, sir.
"Q. Did you give the bag later to someone?
"A. Well, the officer come up in there later on before I left the hospital.
* * * * * *
"Q. And do you recall him looking through the clothes in your presence?
"A. Yes, sir.
"Q. And do you know what he found? Did he find a knife, let me ask you that?
"A. Yes, he found a knife.
"Q. Okay. Do you remember where it was in the clothes?
"A. In his front pocket, I think.
"Q. Pants pocket?
"A. Yes, sir."
As we see it, the testimony of the mother was essential for more reasons than mere identification. She was a necessary prosecution witness because she formed an essential link in the chain of custody of her deceased son's clothing and her testimony concerning same and the finding of the knife closed in the pocket of his clothing tended to discount defendant's self defense assertion. Further, in order to explain her presence and possession of the clothing it was necessary to establish her relationship to the decedent. See Wolfe v. State, Fla. App. 1967, 202 So.2d 133.
Inasmuch as the jury was in proper possession of the knowledge that decedent was survived by the mother, the use of her testimony to establish identity established nothing to prejudice the defendant that was not already before the jury. Thus, the claimed error was harmless at best. Ch. 59.041, F.S. 1969, F.S.A.
To put it another way, we are of the opinion that where the fact of the survivorship and relationship is otherwise somehow properly before the jury, an exception to the aforementioned rule is created.
Having ruled as we have, we respectfully record this caveat and caution. We in nowise intend a watering down or whittling away of the rule. Indeed, it would have been better practice had the prosecution avoided the problem and this appeal by giving literal application to the rule and thereby called other witnesses to establish the identity, even though such act here could be justified only as a matter of form and not substance.
Further, there is no hint that the prosecution unnecessarily or craftily contrived the situation whereby the relationship was improperly paraded before the jury to the defendant's prejudice. In other words, it will be our purpose if similar facts and issue should again be present to look, as we have here, most carefully into the necessity for the prosecution to call such relative to establish the relationship in matters and fields apart from the identity establishment. This inquiry is in accord with the rationale of Ashmore v. State, Fla.App. 1968, 214 So.2d 67.
Having now reviewed the point in light of the facts and advice afforded, we find no reversible error.
Affirmed.
OWEN and MAGER, JJ., concur.